PAGE COUNTY v. THE AMERICAN EMIGRANT COMPANY.

1. **Swamp Lands:** POWER OF COUNTY TO SELL. The Board of Supervisors has control of the swamp lands of the county, and can make a contract for the sale of the same. When, however, the proceeds of the sale are to be devoted to internal improvements, the contract must be ratified by a vote of the people.

2. ———: ———: PRICE. When the county devotes its swamp lands to the purposes prescribed in Sec. 986 of the Revision, the price of sale is not limited to one dollar and twenty-five cents per acre. Following *Audubon County v. The American Emigrant Co.*, 40 Iowa, 460.

3. ———: SALE: RATIFICATION. In the submission to the electors of a county of the question of ratifying a contract for the sale of its swamp lands, the manner and form of the notice of election are not essential, if there is sufficient notice in fact and a majority vote to ratify the contract.

4. ———: ———: RULE APPLIED. Where it appeared that, without a formal proclamation, as required by Sec. 988 of the Revision, the contract itself was published the same length of time as the proclamation was required to have been, and other informal methods of notifying the people of the county were employed, and at the election more than two-thirds of the electors voted in favor of ratification, and both parties had for years assumed the regularity of the proceedings, it was *held*, that the contract could not be annulled for defect in the notice of the election.

5. **Contract:** CONDITION PRECEDENT: SALE OF SWAMP LANDS. Where a contract by a county for the sale of its swamp lands stipulated that the purchaser should, in addition to the sum named as the purchase price, bring a certain number of emigrants into the county within a certain limited time; that the county should convey the lands when requested, but that they should be mortgaged back to secure the fulfillment of the contract "unless the same shall have been fully paid up:" *Held*, that the introduction of the emigrants did not constitute a condition precedent, and that, upon the payment of the sum named as the purchase price and a request for a conveyance, the county was bound to convey to the purchaser.

6. **Swamp Lands:** CONTRACT. Under the statute making it lawful for counties to devote the proceeds of their swamp lands to certain specified public uses, a contract of sale which required the purchaser to make "such public improvements for the county as by law the same may be devoted to, the county to furnish specifications for said improvements," was a sufficient compliance therewith.

7. **Contract:** SPECIFIC PERFORMANCE: SWAMP LANDS. Facts considered which were held sufficient to entitle the purchaser, under a contract for the sale of the swamp lands of a county, to a specific performance of the contract.

*Appeal from Page District Court.*

MONDAY, JUNE 21.

THIS is a suit in equity, commenced June 22, 1872, to set aside and annul a certain contract entered into between the plaintiff and defendant, September 1, 1862, for the sale of the swamp lands of the county, and its claims thereto under certain acts of Congress and of the General Assembly of Iowa. The District Court rendered a decree annulling the contract on the ground of fraud in procuring it, and on the ground of illegality in failing to comply with the statute in the submission of the contract to a vote of the electors of the county, because "there was no specific object submitted to a vote of the people of the county." Defendant appeals.

*W. W. Morsman,* for appellee.

The plaintiff insists that its Board of Supervisors had no power to make the contract in question (Rev., Sec. 986; Chap. 77, Laws of 1862). The power of the county with respect to its swamp lands is limited to the purposes specified in Chap. 47 of the Revision. *Expressio unius est exclusio alterius.* (*Morrison v. Marquardt,* 24 Iowa, 35; *Morey v. Farmers' Loan and Trust Co.,* 4 Kern., 306; *Wait v. Wait,* 4 Comst., 101; *Curtis v. Leavitt,* 15 N. Y., 259; *Sill v. Coming,* Id., 300; *People v. Draper,* Id., 568.) The county judge derived his powers exclusively from the statute. (*Ford v. Jefferson Co.,* 4 G. Greene, 276.) The power of the county must be exercised precisely as given. (*Hull & Argalls v. Marshall*

*Co.*, 12 Iowa, 154.) The county is not bound by the unauthorized acts of its agents. (*Clark v. The City of Des Moines*, 19 Iowa, 209; *Webster Co. v. Taylor*, 19 Iowa, 120.) When there is any doubt as to the existence of the power, the doubt is resolved against it. (*Merriam v. Moody*, 25 Iowa, 170.) A contract prohibited as to part of its terms is absolutely void. (*Cassady v. Woodbury Co.*, 13 Iowa, 116; *Gray v. Hook*, 4 Comst., 459; 1 Story's Eq., 296.)

The contract is void because it contravenes the express provisions of Sec. 959, Revision, to the effect that no sale of swamp lands shall be made for less than $1.25 per acre.

There was no authority of law for selling at a discount the unadjusted claims for cash and scrip indemnity. A municipal corporation can exercise only those powers expressly given, or such others as are absolutely necessary to the exercise of those given. (*Carter v. City of Dubuque*, Dec. Term, 1872; *State v. Smith*, 31 Iowa, 395; *Clark, Dodge & Co., v. Davenport*, 14 Id., 494; *Merriman v. Moody*, 25 Id., 170; *McInnery v. Reed*, 23 Id., 416; *Clark v. City of Des Moines*, 19 Id., 212.) The term "proceeds," which the county had, by statute, the power to devote, cannot be held to include unadjusted claims, for the term implies an adjustment or settlement. The manifest intention of the legislature was to apply the term proceeds to the "swamp land fund" of the counties. (*Barrett v. Brooks*, 21 Iowa, 144.)

'The defendant having failed to perform, the contract may be rescinded. (*Walters v. Miller*, 10 Iowa, 492; *Allen v. Pegram*, 16 Id., 173; *Parsons on Con.*, 191-2; *Regnear v. Nolin*, 3 Green, 314; *Burge v. Cedar Rapids R. R.*, 22 Iowa, 105; *Green v. Drummond*, 1 Am. Rep., 19; *Edsall v. Briggs*, 20 Mich., 431; *Turk v. McKolson*, 30 Iowa, 405–7.) Defendant should be put in *statu quo*, respecting only matters contemplated in the contract. The Board of Supervisors passed resolutions showing their intention to rescind, of which the defendant had notice. The modification of the contract was void; *First*, because the county had no power to make the contract; and *Second*, because there was no submission of the proposed modification to the vote of the people. A contract

that could not be made without an affirmative vote could not be materially modified without the same authorization.

That there was no notice or proclamation of election respecting the contract, renders it invalid. (Rev., Sec. 988; *Hoyt v. City of Saginaw*, 19 Mich., 42; *Clark v. City of Des Moines*, 19 Iowa, 209; *Hull & Argalls v. Marshall Co.*, 12 Id., 154; *Yont v. Brooks*, 19 Id., 87; *Barrett v. Brooks*, 21 Id., 144.)

The object or proposed public improvement should have been stated in the submission of the contract to the vote of the electors. (Rev., Secs. 954, 957, 986, 987; *Barrett v. Brooks, supra; Hoyt v. East Saginaw, supra.*)

*Nourse & Kauffman* and *J. A. Harvey*, for appellant.

The Board of Supervisors had the power to make the contract.

1. The legislation relating to the powers of counties over swamp lands, enacted prior to 1860, has no application to the powers and duties committed to the Board of Supervisors. (Rev., Secs 221, 310-2-3, 325.) The swamp land acts prior to 1860, contained express limitations on the exercise of powers by the county judge, which are not found in the act of 1860 creating Boards of Supervisors. The act of May 28, 1861, conferred on the Board absolute power over this class of property. (*Allen v. Cerro Gordo Co.*, 34 Iowa, 54.) 2. The power to make such contracts is expressly conferred by Art. 11, Chap. 47, of the Revision, and the act of May 28, 1861, removed whatever restrictions or limitations had existed under prior enactments. The limitation of $1.25 per acre upon the selling price of swamp lands did not apply to those sold under the act of 1858. The Board of Supervisors had the right to sell the indemnity claims at a discount. This is implied in their authority to sell, which has been recognized by this court. (*Allen v. Cerro Gordo Co.*, 34 Iowa, 60.) Whether or not they are the *proceeds* of the swamp lands, they are the property of the county, and, as such, under the control of the Board of Supervisors.

Plaintiff is not entitled to a rescission of the contract on the

ground that he has not settled the lands; because, 1. There is no time fixed within which to furnish settlers, and therefore, plaintiff has no right to say the time has expired. 2. There is no evidence showing how many acres of swamp land are "fit for settlement," or that a single tract is. 3. The evidence does not show that under the terms of this contract defendant was required to furnish a single settler. 4. The contract is so indefinite in this respect, that it cannot be enforced as a legal obligation. A contract will not be rescinded unless both parties can be placed in *statu quo*, and one cannot have the advantage of a partial performance by the other, and rescind for failure to perform the residue. (2 *Pars. on Con.*, 191–2; 32 Iowa, 105.) The settlement of the lands could not be a condition precedent to the acquisition of title by defendant, because it could not settle them without having title.

The defendant was not bound to wait for a conveyance until a mortgage was executed for, at the time the mortgage was demanded, the obligation in the contract which the mortgage was intended to secure, to-wit, the payment of the consideration, was fully discharged. The words "paid up" could refer to nothing but the payment of the money stipulated in the contract. It is inconsistent with the spirit of the contract and obvious intent of the parties, that a mortgage should have been required. The lands were to be *sold* by defendant. To sell implies the power to give a clear, not an incumbered, title.

The fraud of the Board of Supervisors, if any, by the misapplication of the consideration paid by defendant, would not invalidate the contract. After it had been paid, its disposition could not affect defendant. Besides, the county by vote ratified the act of its agents, and made it its own.

The publication of a proclamation was wholly immaterial, since the people were, in fact, advised of it, and more than two-thirds of all the voters in the county voted to ratify the contract. The Board canvassed the result and cannot go behind that act. (*Com'rs of Knox Co. v. Aspinwall*, 21 How., 544; *Bissell v. The City of Jefferson*, 24 Id., 299;

*Pendleton Co. v. Arry*, 13 Wal., 297; *Meyer v. Muscatine*, 1 Id., 384.) The clerk certified that the contract was ratified, the county received the consideration, executed the deed, placed it on record, and held it for delivery until 1869, without objection to the validity of the contract. It is estopped to make the objection now.

The Statute, Revision of 1860, p. 129, amended by Chap. 77, Acts 1862, does not require that the contract specify the particular work or improvement. To leave the discretion with the Board might have justified the people in voting against it, but did not make it unlawful or void. (*State, ex rel Brooks v. Napier*, 7 Iowa, 425; *Barrett v. Brooks*, 21 Id., 144.)

Plaintiff cannot recover because:

1. This action is barred by the statute of limitations. It should have been brought within five years. 2. The contract has been executed and the parties cannot be placed in *statu quo*. (*Reynear v. Neilin*, 3 Gr., 310; *Armstrong v. Pierson*, 4 Iowa, 317; *Moore v. Barr*, 11 Id., 198; *Roberts v. Tallaferro*, 7 Id., 112; *Fejervary v. Langer*, 9 Id., 159; *Brainard v. Holsable*, 4 Gr., 485; *Zabriskie v. Cleveland, etc., R. R.*, 23 How., 400; *Story on Con.*, §§ 22, 480, 979.) 3. Plaintiff is estopped from denying the validity of the contract, or claiming title to the lands by its subsequent acts. (*Foster v. Bigelow*, 24 Iowa, 382; *Lucas v. Hart*, 5 Id., 415, and cases cited; *McCabe v. Raney*, 32 Ind., 309; *Miller v. Land Co.*, 66 N. C., 503; *Richmond v. D. & S. C. R. Co.*, 33 Iowa, 423; *Marshall Co. High School Co. v. Evangelical Synod*, 33 Id., 362; *Iowa R. L. Co. v. Story Co.* 36 Id., 48; *Pendleton Co. v. Arry*, 13 Wal., 297; *Moran v. Comis*, 2 Black, 722; *Bissell v. City of Jefferson* 24 How., 287; *Meyer v. Muscatine*, 1 Wall., 384; *Van Hostrip v. Madison City*, Id., 291; *Supervisors v. Schenck*, Id., 772.)

The defendant is entitled to the relief asked for in its cross bill; it has performed its obligations under the contract; the consideration was not inadequate, for it assumed a risk in its purchase of the claims for indemnity, and only by great labor and expense were they finally secured.

*Morsman,* in reply:

The case of *Allen v. Cerro Gordo Co.,* cited by defendant, differs from this in that, in the present case, the Board of Supervisors seek to make a *sale,* while in the former, the county, through its Board, made a contract, not for the purpose of giving up its rights under the grant, but for the purpose of enforcing and securing them. The power to sell unadjusted claims at a discount must either be expressly given or absolutely necessary to the exercise of those expressly given. That it is withheld is evidence of a reasonable purpose in doing so. The rule that there shall be no rescission of a contract where the failure of the defaulting party is but partial, does not apply where the other party would be remediless without such relief. (2 *Pars. on Con.,* 191–2.) An *official* notice of an election is notice to every one, whether he has actual notice or not. Sec. 988 of the Revision requires a proclamation to be published with the contract; without this proclamation the contract is of no force or validity. If a case under Sec. 986, as amended by Chap. 77, Laws of 1862, and Sec. 987, is not submitted as required by Sec. 988 (requiring publication of proclamation), then the contract is void. (*Grimes v. Hamilton Co.,* 37 Iowa, 290.)

This action is not barred. The defendant is a non-resident corporation, and the cause of action, being for the recovery of real property, has ten years to run. Plaintiff alleges fraud. The burden is on the defendant to show the discovery of the fraud more than five years before the commencement of this action. (*Baldwin v. Tuttle,* 23 Iowa, 72.) The doctrine of estoppel does not apply. Whatever has been done has been under and relying upon the contract, and not in reliance upon admissions made by, or the conduct of, plaintiff's officers. A corporation may interpose the plea of *ultra vires,* when its agents act without the limit of their authority. (*Clark v. City of Des Moines,* 19 Iowa, 209.) If the officers of a county do an illegal act, the fact that a majority of the people have voted upon the proposition does not legalize it.

MILLER, CH. J.—The agreement entered into. between the county and the defendant is as follows:

. "Agreement made and entered into this first day of September, 1862, between the county of Page, State of Iowa, of the one part, and the American Emigrant Company, by F. C. D. McKay, their general agent for the State of Iowa, of the other part.

The said county devotes all the swamp lands of the county, and the funds and proceeds thereof, as fully as the county may be entitled to the same, to the making of improvements hereinafter named by said company, and the said county grants and agrees to convey and dispose of said lands and funds to said company for said use.

But the county reserves from this contract the following parts and parcels of said lands and funds:

1st. The lands contracted to be sold by the county to LeGrand Byington, being about 2080 acres.

2nd. The lands already sold by the county and deeded to purchasers, being about 5,900 acres.

3rd. There are some certificates of pre-emption outstanding against said swamp lands, not yet taken up or otherwise arranged; this contract is so far subject to such pre-emptions as that said company take subject to them, and are to respect and fulfill the same as the Board of Supervisors shall deem just and right.

The company take said lands and fund subject to the aforesaid reserves, and agree to make such public improvements for the county therefor as by law the same may be devoted to the making of, to the full amount and value of two thousand and five hundred dollars, the county to furnish specifications for said work and improvements from time to time as they choose, on or after October 1st, 1863, and the work to be finished according to such specifications in one year from the first day of January after such specifications are finished.

The following method is agreed on for the ascertaining of the value of said improvements: If the Board of Supervisors shall choose to superintend the construction of such work without charge to said company, and shall at any time offer

so to do, the company will in such case deposit said sum of $2500.00 in current funds with the treasurer of said county, as soon as the 1st day of January, 1865.

If said Board prefer not to superintend said improvements as aforesaid, the same are to be let at public auction to the lowest responsible fair bidder, who will give ample security for performance, in the usual manner of letting like jobs.

The company takes said lands subject to all the provisions of the Act of Congress of September 28th, 1850, and expressly releases said county, and the State of Iowa, from all liability in reclaiming said lands.

The county shall, at any time when requested, convey and transfer said lands and fund to said company or its agents, but the entire interest so conveyed shall be mortgaged back to secure the county for the fulfillment of the contract, unless the same shall have been fully paid up, or other satisfactory security given therefor.

So long as the county holds the legal title to said lands or fund, or the equitable title by mortgage or otherwise, no taxes are to be assessed against the same, except so fast as the same may be sold to purchasers taxes may be assessed thereon. And the company agree to settle one-third of said land fit for settlement in three years from the ratification of this contract; another third in five years, and the whole in eight years. That in settling said lands the company will sell only to white persons, and to sell the same to purchasers in the usual quantities for farms.

The company will appoint a responsible and proper person in said county as their local agent or special agent, on whom all notices may be served, and to whom any notice required by this contract may be given; or in default of such appointment, such notice may be made or given by mailing the same to the general agent of said Company at Des Moines or to S. P. Lyman, Secretary of said Company, No. 78 Broadway, New York City.

The county is to appoint any agent named by the company as its agent to finish up and transact any business to be done with said lands or the General Government; but the county

is not to be responsible for the faithfulness of any such agent, nor for any cost or expense thereof.

GEORGE RIBBLE,

*Pres't The American Emigrant Company,*

By F. C. D. McKAY,

*The General Agent for the State of Iowa.*

I.   It is claimed, in the first place, that the county had no *power* to make this contract, and that aside from all questions of performance, consideration, regularity or the like, the making of this agreement was outside of the power of the Board of Supervisors to make on behalf of the county, and that, therefore, the agreement is void and in no manner binding upon the county.   The same question came before the court in *Allen v. Cerro Gordo County,* 34 Iowa, 54, where it was fully considered and determined that the Board of Supervisors did possess the power to make the contract in question, which was similar to the agreement in this case.   It was held in that case that the county, being a municipal corporation authorized by statute to hold and dispose of lands granted to it, possesses the incidental power, the same as individuals, to do, through its Board of Supervisors, whatever in their judgment may be necessary to preserve and perfect its interest in, and title to, the same; and that the statutes confer full and ample authority on the Board of Supervisors over the swamp lands of the county.

The authority of the Board to enter into the agreement in question, we hold to be fully settled by that case.   There the contract provided for the sale and disposition, by the county, of one-half the swamp land interest, while in this case all of the swamp land interest is disposed of.   This, however, can make no difference in the principle upon which the power of the Board of Supervisors to make the sale rests.   It is the same in each case, and there is only this difference that, in this case the lands themselves being devoted by the county to the making of improvements, a ratification of the disposition thereof by the electors of the county was necessary for that purpose.   See section 1, chapter 77, Laws of 1862.

This ruling applies as well to the indemnity lands as to the swamp lands situated within the county. See, also, *Audubon County v. The American Emigrant Co.*, 40 Iowa, 460.

II. It is next urged by plaintiff that the contract is void because it purports to be a sale of the swamp lands, and swamp-land claims of the county at a less price than one dollar and twenty-five cents per acre, contrary to the provisions of section 959.

2. ——: ——: price.

In *Audubon County v. The American Emigrant Company, supra*, we held that where the swamp lands themselves were devoted as prescribed by section 986 of the Revision (being an Act passed March 28, 1858), the power of the Board to do so was not limited to the price of one dollar and twenty-five cents per acre; that the provisions of section 986 were independent of those of section 959, in this particular, that the regulation as to price in the latter section does not apply to contracts made under the former. The contract in this case, like that in the Audubon County case, was made under section 986, the lands being thereby devoted to the purposes mentioned therein, and is not rendered invalid, for the reason here urged.

Again, it is by no means clear that the lands were disposed of for less than one dollar and twenty-five cents per acre, for beside the public improvements to be made by the defendant, which were afterwards commuted and paid in money by the defendant, it also, among other things, agreed to take the lands "subject to all the provisions of the Act of Congress of September 28, 1850," and expressly released "the County and State of Iowa from all liability in reclaiming said lands," thereby agreeing to meet all the expense required for their reclamation under said Act of Congress, which might be equal or in excess of the price fixed on the land by the above section of the statute. The object of the grant by Congress to the state was to secure the reclamation of these swamp lands. And the Acts of the General Assembly of Iowa in respect thereto do not require them to be sold for one dollar and twenty-five cents per acre, in addition to the cost of reclaiming them.

Furthermore, the Emigrant Company expended large sums of money in procuring the allowance of the greater portion of the swamp land claims of this and other counties, which had been previously rejected by the land department of the General Government at Washington, and, but for the efforts of the company in the premises, it is reasonably certain the county would not have obtained any further allowances of either land or indemnity than had been made prior to the making of the contract with the company.

III.   The plaintiff's counsel insist that it is shown by the evidence that no proclamation of the question of ratifying the contract by the electors of the county was published as required by law, and that, therefore, the contract is of no validity.

3. ——: sale : ratification.

In the second section of the Act of the General Assembly of March 22, 1858 (Revision, Sec. 987), it is provided that, "the proper officer or officers of any county, may contract with any person or company for the transfer or conveyance of said swamp or overflowed lands, or the proceeds thereof, or otherwise appropriate the same to such person or company or to their use, for the purpose of aiding or carrying out any of the objects mentioned in the first section of this Act, which said contract shall be reduced to writing and signed by the respective parties or their lawfully authorized agents." The next section provides as follows:  "Before such contract shall be of any force or validity, the same shall be published for four weeks immediately preceding some general or special election, in some newspaper published in the county, and if there be none published therein, then three copies of the same shall be posted in three of the most public places in each township in the county for the length of time aforesaid, together with a proclamation of the proper officer, and directing how and where the vote thereon shall be taken, and returns made and canvassed, and in what manner or form the people shall vote thereon; and if it shall appear that a majority of the people in any county voting thereon are in favor of the contract or proposition submitted to them, then, and in that case, such contract or proposition shall be binding upon the

parties thereto, but if a majority of the people voting on such proposition are against the same, then it shall be null and void: *provided*, that no sale, contract, or other disposition of said swamp or overflowed lands shall be valid, unless the person or company to whom the same is sold, contracted, or otherwise disposed of, shall take the same subject to all the provisions of the Acts of Congress of September 28, 1850, and shall expressly release the State of Iowa, and the county in which the lands are situate, from all liability for reclaiming said land."

By this section of the statute, the essential thing to be done, in order to give validity to the contract mentioned in the preceding section is, "that a majority of the people in any county voting thereon are in favor of the contract or proposition submitted to them;" for, says the statute, "then and in that case such contract or proposition shall be *binding* upon the parties thereto." It is necessary, of course, that the voters should be advised of the nature and terms of the contract or proposition, and when and where they are called upon to express, by vote, their assent or dissent thereto; but the *manner and form* of the notice can hardly be said to be of the essence of the matter, if there has been sufficient notice *in fact*, upon which the voters of the county have acted, and have ratified the contract. In the case of *Dishon v. Smith, County Judge*, 10 Iowa, 212, which was an action growing out of the question of removing the county seat of Marshall county, this court, after citing and quoting from numerous cases, said that, "the courts have held that the voice of the people is not to be rejected for a defect, or even a want of notice, if they have in truth been called upon and have spoken. In the present case," says the court, "whether there were notices or not, there was an election and the people of the county voted, and it is not alleged that any portion of them failed in knowledge of the pending of the question, or to exercise their franchise."

We are not required to hold in this case that there could be a valid ratification of the contract without any kind of notice whatever. As we have said, the essential facts to make the

contract "binding" are, that a majority of the people should vote in favor of the contract, and that they should have the information necessary to do so intelligently.

While it is true that the evidence does not show that any formal *"proclamation"* was published in the manner directed

4. ——: ——. in the statute, it does, however, show that the con-
rule applied. tract, (which, by the statute, is the important matter to be published,) was, in pursuance of directions by the Board of Supervisors of the county, published for the requisite time in a newspaper printed in the county and thoroughly circulated throughout the county, accompanied by frequent editorial notices and special communications discussing the proposition submitted to the people, calling their special attention to the matter; also, that an address and circular, signed by numerous prominent citizens of the county, setting forth the merits of the proposition and urging the electors of the county to ratify it by their votes at the ensuing election, was published and circulated in the county, and that the various townships of the county were canvassed by individuals specially, who discussed the proposition among the people prior to the election.

It also appears that the question of ratifying the contract was generally voted upon in every township in the county; that, in every township except one, there was a majority of votes in favor of the contract; that there were 531 votes cast upon the proposition, of which 411 were for, and 120 against it; that at the same election, which was a general one, there were 606 votes cast in the county for Secretary of State, and 419 for Clerk of the District Court. The whole vote on the question of ratifying the contract in question was 75 votes less than the vote on Secretary of State and 112 votes more than that on clerk, so that, if we take the largest vote as showing the entire voting population of the county, more than two-thirds of them voted to ratify the contract submitted to them.

In actions in court it is necessary, in order to bind a defendant, that he shall have notice so that he may be heard, but, although the notice may be defective or entirely insufficient, if he appear to, or defend the action, he will be bound by the

judgment therein; so, also, in this case, although there may have been a defect in the *form of the notice* given of the proposition to be voted upon, yet almost every voter in the county attended the election and voted thereon, and largely more than a majority voted in favor of it. This being the vital act, the contract thereupon became, in the language of the statute, "binding upon the parties thereto." It also appears that, upon a canvass of the votes by the Board of Supervisors, they declared the contract duly ratified and gave written notice thereof, through their clerk, to the defendant. Both parties have for years acted upon the validity of the agreement so far as that depended upon the vote of the people. We find it to be valid; the only defect being in the *form of the notice* directed to be published with the contract; *notice in fact* was given; the contract itself was duly published; the statute was substantially complied with, and no prejudice resulted from a failure to comply technically. See, in support of these views, *Dishon v. Smith, supra.*

IV. It is further urged on behalf of the plaintiff that it is entitled to a rescission of the contract because of the failure of the defendant to bring into the county the number of settlers specified in the agreement within the time stipulated.

We think it clear from the whole contract that this stipulation was not intended as a condition precedent to the making 5. CONTRACT: of the conveyance of the land by the county. It condition precedent: sale is provided in the contract that, " the county shall of swamp lands. at any time when requested convey and transfer said lands and fund to said company or its agents, but the entire interest so conveyed shall be mortgaged back to secure the county for the fulfillment of the contract, unless the same shall have been fully paid up, or other satisfactory security given therefor."

It is also stipulated that the company takes the land and fund subject to all the reserves named therein and "agrees to make such public improvements for the county therefor as by law the same may be devoted to the making of, to the full amount and value of two thousand five hundred dollars, the county to furnish the specifications, etc." It is also stipulated

that, "if the Board of Supervisors shall choose to superintend the construction of such without charge to said company, and shall at any time offer so to do, the company will in such case deposit said sum of $2,500.00 in current funds with the treasurer of said county as soon as the first day of January, 1865." The substance of this is, that the company will make the improvements on specifications furnished by the county, or, if the county choose, the company will pay the money into the county treasury. Now this is the only *payment* of any kind provided for in the contract, and when such payment should be made the county was bound to convey. The mortgage for the fulfillment of the contract was to be given unless the same should be *fully paid up*. If fully paid up, then no mortgage was to be given, but the conveyance was to be then made. This is the evident meaning of this clause in the contract.

The agreement in this respect was complied with by the company paying, at the request of the county, the sum of $2,500.00 into the county treasury. Upon such payment and request of the defendant the plaintiff was bound to convey.

Again, it is shown by the proof that the defendant made frequent efforts to settle emigrants upon swamp lands in the county, but were unable to do so, because of the failure of the county to comply with the agreement on its part, by conveying the lands to the defendant. Until the county had conveyed to the defendant, the latter could not sell to, and settle, emigrants thereon, and doubtless this was understood in making the contract, hence, the agreement that the county should convey the lands to defendant on request. This consideration also shows that the settlement of the lands was not understood to be a condition precedent to the conveyance thereof, by the county to the defendant.

Subsequent to the making of the contract the parties modified it in respect to the matter of bringing emigrants or settlers into the county, as follows: "It is mutually agreed between said county and said company, that the contract existing between them, so far as it provides that one-third the lands therein named fit for settlement thereon, be settled by

said company in three years, and one-third thereof in five years, and the remainder thereof in eight years from the time mentioned in said contract, be changed, so as to be as follows: That said company shall cause to come into the county of Page such a number of settlers, who shall become actual settlers, either upon said lands purchased of said county by said company, or upon other unimproved lands in said county, or upon both such lands, as will equal in number the persons that would be so brought in by said company, if the company were to fill said contract as it was at first made, and that such settlement upon such other lands shall be deemed to be so far in fulfillment of said contract by said company, the same as though they had settled upon the lands originally bought by the company of the county."

It is claimed by plaintiff's attorneys, that the Board had no power to make this modification—the same not being ratified by a vote of the people—and that it is therefore invalid. If this be so, then the contract, as at first made, remains unchanged, and, as we have seen, the failure to bring in the settlers is no ground for rescinding the contract. If this change, however, is valid, the same result still follows, no time being fixed within which the settlers are to be brought into the county, and in no other respect is it made a condition precedent to the conveyance of the lands to the defendant. It becomes immaterial, therefore, to determine whether the Board of Supervisors had authority to make this change in the contract or not.

V. It is insisted by the plaintiff that the contract is invalid, because it did not specify the particular work or improvement to be made by the company for the use of the county.

6. SWAMP lands: contract.

The statute made it "lawful for the counties owning swamp and overflowed lands, to devote the same or the proceeds thereof, either in whole or in part, to the erection of public buildings for the purpose of education, the ·building of bridges, roads and highways, for building institutions of learning, or for a permanent school fund for the use of the county to which such lands belong, or for building county buildings,

or for making railroads through the county or counties to which such lands belong." See Revision, Sec. 986, as amended by chapter 77, Laws of 1862.

The contract provided that the defendant should make " such public improvements for the county *as by law the same may be devoted to*, the county to furnish specifications for said work and improvements." Here the contract devotes the land to the defendant, for the purpose of carrying out or assisting in carrying out the very purposes named in the statute, to be specified by the county. The agreement is to the effect that the lands and fund shall be devoted to some of the purposes specified in the statute, to be determined by the Board of Supervisors of the county. We think the contract in this respect clearly complies with the statute. The provisions referred to limited the use of the lands or their proceeds to the objects named in the law; these were to be made specific by the county authorities. In such case no authority was conferred to devote the lands or fund to any other than lawful purposes. It was as certain as if the particular improvement had been named in the contract, for that is certain which can be made certain.

VI.   In respect to the claim of the plaintiff that the contract should be rescinded because of frauds committed by the defendant and its agents, in the procurement of the agreement, we merely say, that after a very careful reading and examination of the evidence we fail to discover any proof of fraud or bad faith whatever, on the part of the defendant or any of its agents, touching the making of the contract.

VII.   In respect to the claim of the defendant for a specific performance of the contract, by the delivery of a conveyance to the defendant of the land in controversy, we are of opinion that it is entitled to a decree therefor. The proof shows that in pursuance of the contract, recognizing it as valid and binding, the county executed a deed, received the consideration money agreed to be paid, ordered the deed to be recorded and delivered to the defendant upon the execution of a mortgage by the latter for the fulfillment of the contract on its part, and placed this deed

*7. CONTRACT: specific performance : swamp lands.*

in the hands of the agent of the defendant for delivery to its chief officer, upon the making of the mortgage. As we have already seen, the only condition precedent to the making and delivery of the deed had already been performed by defendant in the payment to the plaintiff of the sum of $2,500.00. All the money to be paid in any event, under the contract, had been fully paid before the execution by the county of a conveyance, and it had no right to demand the execution of a mortgage as a condition to the delivery of the deed. The defendant became entitled to the delivery of the deed upon request, after having paid this sum of money. This sum of money, however, was only a part of the consideration already paid by the defendant for the land, etc. It had expended, as we have already seen, large sums of money, and devoted much time and labor by its agents in obtaining the recognition of the claims of the county by the Federal authorities. The defendant has, in all respects, fully performed its contract so far as to entitle it to a conveyance of the land under the contract. The judgment of the court below will be reversed, plaintiff's petition dismissed on the merits, and a decree entered requiring plaintiff to specifically perform its contract by executing a proper conveyance.

Appellant may have final decree in this court, if it so elects, within ten days from the filing of this opinion.

REVERSED.