CITY WATER SUPPLY CO. v. CITY OF OTTUMWA.

(Circuit Court, S. D. Iowa, E. D. January 27, 1903.)

No. 248.

1. MUNICIPAL CORPORATIONS—SUIT TO ENJOIN CREATION OF ILLEGAL INDEBTEDNESS—PARTIES.

To a suit by a taxpayer against a city to enjoin it from creating a debt beyond the constitutional limit, by carrying out a contract made with a person or corporation, such person or corporation is not an indispensable party defendant.

2. SAME—LIMITATION OF INDEBTEDNESS—BASIS OF COMPUTATION.

Under the provision of the Iowa constitution limiting the indebtedness which may be contracted by any municipality to 5 per cent. of the value of its taxable property, such per cent. is to be computed on the assessed value of the property for taxation, and not on the actual value, where the two are not the same.

3. SAME—CONTRACT CREATING INDEBTEDNESS.

That a city which is already indebted in excess of the constitutional limit has in its treasury a part of the money necessary to discharge the obligation it assumed in entering into a contract for a public improvement, and may be able to collect the remainder from taxes by the time the obligation matures, does not alter the fact that such contract creates an indebtedness within the constitutional inhibition, and is therefore one which the city was without power to make.

4. FEDERAL COURTS—FOLLOWING DECISION OF APPELLATE COURT—CONFLICTING STATE AND FEDERAL DECISIONS.

Where the circuit court of appeals in a suit by a taxpayer determined that a contract made by a city under an ordinance was void as creating an indebtedness, when the city was then indebted to the limit permitted by the constitution of the state, such decision is binding on a circuit court of the United States in a subsequent suit between the same parties, involving a different contract, but one which was made pursuant to the same ordinance, notwithstanding a contrary decision by the supreme court of the state.

---

¶ 2. Constitutional and statutory limitations of municipal indebtedness, see note to City of Helena v. Mills, 36 C. C. A. 6.

¶ 4. State laws as rules of decision in federal courts, see notes to Spokane Falls & N. Ry. Co. v. Ziegler, 9 C. C. A. 548; Wilson v. Perrin, 11 C. C. A. 71; Hill v. Hite, 29 C. C. A. 553.

In Equity. On motion for a temporary injunction and motion by defendant to dismiss.

William McNett, for complainant.

W. H. C. Jaques and Charles D. Fullen, for defendant.

McPHERSON, District Judge. This is a bill in equity now pending on application for a temporary injunction to enjoin the city from creating a debt by carrying out contracts with the United States Cast Iron Pipe & Foundry Company, a corporation of New Jersey, and the Des Moines Bridge & Ironworks, a corporation of Iowa. The complainant owns real estate and other property in Ottumwa, and brings this bill as a taxpayer. It is a citizen of the state of Maine. The city proposes to construct what is called a system of waterworks, and the foundry company and the ironworks company above named are to furnish materials and do the work at an expense of about $20,-000. The two corporations named are referred to in the bill. Whether they are made parties is doubtful. The prayer is against them, and they were covered by the restraining order.

As counsel say that this court has no right to adjudicate the matters as against the city without their presence, I am met on the threshhold of that which is equivalent to a jurisdictional question. The city is in debt to the constitutional limit, and complainant contends that, if the scheme of the city is carried out, an invalid indebtedness will be created, and therefore an injunction should be issued to enjoin the same. The main, if not the only, controversy is between the complainant, a citizen of Maine, and the city of Ottumwa, a citizen of Iowa. I fully agree with defendant's counsel that this court cannot, by any order or process, coerce the appearance of the pipe and foundry company, a citizen and corporation of New Jersey, or, if it does not appear, make a valid order against it as on default. Shaw v. Mining Co., 145 U. S. 444, 12 Sup. Ct. 935, 36 L. Ed. 768. And it does not voluntarily appear. And, if this case were in one of the Iowa state courts, jurisdiction could not be had in a case like this over the New Jersey corporation. Service of process on it in New Jersey could not enforce its appearance in an Iowa court, or authorize any order or decree against it, if it failed to appear. There is no Iowa statute which authorizes service by publication in a case like this. It therefore follows that neither this court nor the state court can take jurisdiction over the New Jersey corporation. And it also follows that, if it is an indispensable party, there is no court, either at home or elsewhere, in Iowa or New Jersey, that can take hold of the case. Because if the complainant were to go into a court, state or federal, in New Jersey, there could no way be found to coerce the appearance of the city of Ottumwa. If the contention of counsel for the city be correct, then complainant may have ever so good a cause of action, and ever so many grievances, and yet no court, state or federal, can be found to grant relief. If this be so, we have a novel, curious, and serious state of affairs. The city, and it only, is the necessary party.

Numerous cases, both federal and state, are found in the reports, wherein cases like this have gone to decree with the city only as

defendant. The contention of counsel for defendant herein, that the point was not made in those cases, is probably correct. But it is a matter of some weight. And the more so as to the federal cases, for the reason that such courts, on their own motion, are supposed to, and generally do, look into all jurisdictional phases of the cases before considering a case on its merits. But, if the New Jersey corporation were otherwise regarded as a necessary party, section 737 of the Revised Statutes [U. S. Comp. St. 1901, p. 587] and equity rule 47 fully authorize this court to go on to decree without the presence of the New Jersey corporation. By an amendment to the bill it is taken out of the case, if it were ever in.

The defendant city cites the following cases as to the point that the Des Moines and New Jersey corporations must be made parties, and that jurisdiction be acquired over them: Ribon v. Railroad Co., 16 Wall. 446, 21 L. Ed. 367; New Orleans Waterworks Co. v. City of New Orleans, 164 U. S. 471, 17 Sup. Ct. 161, 41 L. Ed. 518; Minnesota v. Northern Securities Co., 184 U. S. 199, 22 Sup. Ct. 308, 46 L. Ed. 499. I do not care to review those, as well as other cases that could be cited. They are not in point, for the reason that those were cases wherein contracts and relations between the named defendants were the principal thing sought to be canceled or controlled by decree. In the case at bar the principal thing to be corrected and enjoined by decree is the creation of the alleged invalid indebtedness. And if a city is in debt up to the constitutional limit, and if the contention of the city be correct, all that a city need to do is to create the invalid indebtedness with some nonresident citizen, and then we have no court, federal or state, that can correct the evil or prevent the wrong. And the statement of the proposition is its own complete refutation. A constitution must not be whistled down the winds by that kind of a scheme.

The city, as it is claimed by the complainant, is about to create an invalid indebtedness. The action of the city, by its counsel, is not of a legislative character, but of a proprietary or business nature,—a distinction so admirably stated by Judge Sanborn in Illinois Trust & Savings Co. v. City of Arkansas City, 22 C. C. A. 171, 76 Fed. 271–282, 34 L. R. A. 518.

I do not believe that either of the corporations are necessary parties, or even proper parties, although as to the latter question is not before me.

The complainant has no grievance, present or prospective, against either of the corporations. Its complaint is against the city of Ottumwa, acting through its officers, because of the threatened and contemplated act of a proprietary or business character. And the question before me is whether the city is about to create an illegal indebtedness, which if not enjoined the complainant and other taxpayers must pay. And the argument that, under a recent decision of the Iowa supreme court, these corporations, if the city is enjoined from paying them, will hold the city liable by suits in the state court, is an argument that I cannot follow. The federal as well as the state courts have their responsibilities, which they cannot evade, and I do not dare to refuse to follow the decision of the appellate court for this circuit, so recently rendered.

If the action of the city is illegal as viewed by the federal courts, then the complete answer to the argument is that the officers of the city have placed themselves in the position they occupy, and this by no act of complainant or of many other taxpayers, but have done so with full knowledge of the views of the federal courts as to the true meaning of the provision in question of the Iowa constitution. And it is not convincing to urge that while the city may have no defense in this case in this court, yet it should be allowed to go hence, with its costs, without day, because of fear that in some other court, in some other case concerning the same transaction, the city may be worsted. An answer pleading such an asserted defense would be nothing but words.

Complainant contends that notice, as required by law, was not given for the election. Whether it was or not is somewhat doubtful, and, at best, the matter is in confusion.

At the preceding general election for the election of a congressman and state and county officers there were 3,743 votes cast. At the special election in question there were 1,921 votes cast. There were newspaper discussions and communications with reference to the matter. The night before election there were some public meetings at which the matter was discussed. I therefore hold that the notice, which at most was defective, does not so nearly approach "no notice" as to invalidate the election. Dishon v. Smith, 10 Iowa, 212; Page Co. v. American Emigrant Co., 41 Iowa, 115.

I have been furnished with many affidavits, and a great deal of literature, all of which I have read, both with interest and amusement. These affidavits and literature impress me with two things. The one is that, as complainant's charter has expired, it desires a renewal, because, of course, its plant cannot be removed, excepting at great expense, and confiscation will be the result. The other is that the city is not very anxious to put in its proposed and so-called system of waterworks, but is very anxious to either buy at its own price complainant's system, or enforce a renewal of its charter, and the city will dictate its own terms. One would think, at least I so think, that the parties could easily select an arbitrator who would readily adjust the differences to the satisfaction of all fairly disposed parties. Be these matters as they may, evidence relating to propositions and counter propositions, newspaper articles and speeches, at one place and another place, supply only the humorous phases of litigation, but furnish nothing upon which a decree of a court of chancery can rest.

As coming from the city attorney, Mr. Heindell, it is urged that since the adoption of Iowa St. 1898, c. 30, the legal or constitutional indebtedness of a municipality can be four times as great as before the adoption of that statute. The statute in question is as follows:

"All property subject to taxation shall be valued at its actual value, which shall be entered opposite each item, and shall be assessed at twenty-five per cent. of such actual value. Such assessed value shall be taken and considered as the taxable value of such property, upon which the levy shall be made. * * *"

Neither of the counsel before me pressed the point, but presented the question for determination. Under a constitutional provision like

that of Iowa, limiting the indebtedness of a city, the Illinois supreme court, in a well-considered case, held, but recently, that it is the per cent. of the value of the property on which taxes were assessed that governs, and not the actual value of the property. City of Chicago v. Fishburn, 189 Ill. 367, 59 N. E. 791.

Believing that decision eminently sound and the reasoning unanswerable, I am content in referring to it as an authority on the question mooted, and as fully and correctly expressing the views I entertain upon the question. The people must not be taxed upon one basis of valuation, and the city go in debt upon another four times as great.

The taxable property of the city of Ottumwa, as ascertained by the last preceding tax list, is $2,352,570; 5 per cent. thereof, $119,-128.50; the indebtedness of the city is $122,690; the city has on hand of a two-mill water fund, $13,746.51. It has other moneys in small amounts for various funds, and various appropriations against the same have been made.

That the city, over and above its other obligations for current expenses, does not have the money with which to pay on the contracts in question, is without doubt in my mind. It makes a showing that it can pay them out. But that is not the question. It hopes to pay out, and perhaps without interest. It is making a liability. It does not have the money with which to meet the liability. But it says it has part of the money, and the balance from time to time it will receive by the collection of taxes. That is going in debt, just as much as the farmer who buys the adjoining tract of land, who pays part of the purchase price at the time, and expects to pay the balance soon from his collections. Whether a party is in debt does not depend upon his net worth. That is one definition of "solvency," but not of "indebtedness."

I appreciate in full the force of the argument, that it is desirable, in the judgment of many, for a city to own its own system of waterworks. I appreciate the fact that, if some arrangement is not soon made, the city will be embarrassed for want of a supply of water, although it is possible that, if these parties refuse to agree, a court of equity can solve the situation. I do not say this is so, but courts of equity have powers in addition to those usually exercised.

On the other hand, I appreciate the fact that, if those contracts are carried out but a part only of the business district will be supplied with water, and practically all of the residence portion of a city of 20,000 people cannot be supplied. And I also appreciate the fact that the water to be thus supplied would come from the river below, and almost immediately below, the mouths of the city sewers. But these are not questions for the court. Nor is the city bound by the precise question voted on by the voters at the election, as was recently held by the court of appeals in a case from this district. City of Centerville v. Fidelity Trust & Guaranty Co. (C. C. A.) 118 Fed. 332. But I am impressed that above and beyond all are the obligations of the constitutions, both federal and state.

But little over a year ago, in a case between these same parties, I had occasion to consider the question of when a city is prohibited

from creating a liability. I am not content with the way I then presented the matter, but I am wholly satisfied with the conclusion I then reached. Reading since then of what many others have said upon the question has given emphasis to my mind that there is no other logical or safe conclusion that can be reached.

It is true that the writer of the opinion of the circuit court of appeals, in affirming the decree of this court, could have placed the refusal of that court to follow the decision of the Iowa supreme court in Swanson v. City of Ottumwa, 91 N. W. 1048, upon another ground. The court of appeals could have said that when this court decided the case the Iowa supreme court had not then otherwise decided the question (Burgess v. Seligman, 107 U. S. 20, 2 Sup. Ct. 10, 27 L. Ed. 359); and this case within the last two months has been cited with approval by the United States supreme court in the case of Security Trust Co. v. Black River Nat. Bank of Lowville, 23 Sup. Ct. 52–57, 47 L. Ed. ——. So that it is not true, as contended by many lawyers in recent discussions, that it is the duty of federal courts in all cases to follow the latest decision of the state supreme court in the construction of state statutes and state constitutions. But the court of appeals deemed it best to affirm the decision of this court, upon the broad ground that it was not the construction of a statute or constitution that was involved, but the construction of contracts and a matter of general jurisprudence. And by that this court is bound. Not only so, but did not that court then declare the law of the case, which is binding upon this and other courts in the subsequent litigation between the same parties upon the same subject-matter? And is this not in part the same controversy? Is not the same ordinance now invoked by the city?

And, if the correct rule has not been declared by the court of appeals, then there is no scheme but that can be carried through to be paid for hereafter. Under legislation as it now exists, or that may be enacted, any city may create parks, build sewers, a jail, city buildings, libraries, bridges, bathhouses, waterworks, street railroads, hospitals, and aid railroads, and so forth and so on, without check or hindrance, and create an indebtedness equal to or beyond the actual value of all the property within the city. And it is no answer to say that the people would not vote for the like, because, if that is to be the test, then we have no use for the constitution, but must trust to a majority vote.

It is made to appear in this case by the agreed statement of facts, with all the experience of Ottumwa and Wapello county, as shown by the judicial history of Iowa, that the city is now in debt $37,000 to two railroads for aid voted; and $34,000 of that sum was for aid to a railroad that was in existence but little longer than the time necessary to obtain the aid; and I have but little doubt but that earnest speeches were made in advocacy of that scheme, and that the proposition carried by a large majority vote. But it is not a question of how urgent the scheme seems to be, or what the majority therefor may be. It is a question of what the constitution means when it says that for any purpose, or in any manner, a city shall not create a debt above the 5 per cent.

Generally speaking, it is quite safe to follow Justice Samuel F. Miller on constitutional questions. And what he said in his opinion, speaking for the supreme court of the United States, in the case of Litchfield v. Ballou, 114 U. S. 190–192, 5 Sup. Ct. 820, 29 L. Ed. 132, is quite apt, and ought to be remembered by those who say the majority shall rule in such matters, and that minorities and individuals must submit, and that courts must keep hands off. Justice Miller, at page 192, 114 U. S., page 821, 5 Sup. Ct., and page 132, 29 L. Ed., said:

"But there is no more reason for a recovery on the implied contract to repay the money than on the express contract found in the bonds. The language of the constitution is that no city, etc., 'shall be allowed to become indebted in any manner or for any purpose to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of its taxable property.' It shall not become indebted,—shall not incur any pecuniary liability. It shall not do this in any manner. Neither by bonds, nor notes, nor by express or implied promises. Nor shall it be done for any purpose, no matter how urgent, how useful, how unanimous the wish. There stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt, in any manner or for any purpose whatever. If this prohibition is worth anything, it is as effectual against the implied as the express promise, and is as binding in a court of chancery as a court of law."

The motion to dismiss is overruled, and a temporary injunction will issue as prayed; to all of which the city excepts.