## AUDUBON CO. v. THE AMERICAN EMIGRANT CO.

1. **Swamp Land:** SALE BY COUNTY. The sale by a county of its swamp lands at a less price than one dollar and twenty-five cents per acre, where it was stipulated that the proceeds should be devoted to the purposes specified in the act of March 28, 1858, and the sale was subsequently approved by vote of the people, is valid.

2. **Contract:** BREACH: WAIVER. Where time is made the essence of the contract and it is stipulated that the party who fails in performance shall lose his interest therein, such failure does not render the contract null and void. A subsequent part performance by the party not delinquent is a waiver of the breach.

3. **Swamp Lands:** ACTUAL SETTLERS. A contract by a county for the sale of its swamp lands, for which a part of the consideration was the bringing of actual settlers into the county, is not for that reason illegal.

4. **Contract:** CONSIDERATION. A contract for the sale of lands valued at $7,135 for $4,500 will not justify the court in setting aside the conveyance for inadequacy of consideration.

5. **Parties:** EQUITY. In an action to set aside the title to real estate, the grantees of those whose title is assailed should be made parties.

6. **Estoppel:** TAXATION. Where a county has conveyed its swamp lands and for a series of years levied and collected taxes thereon from the grantee, it is estopped from afterward asserting its own title.

*Appeal from Audubon District Court.*

TUESDAY, APRIL 27.

THIS action was commenced December 12, 1871, in equity, to set aside a certain contract for the sale by the plaintiff of the swamp lands granted it by the state, to the defendant, made June 5, 1862; and also to set aside the conveyances of said land, under said contract, by the county to the defendant, one, made January 7, 1867, and the other, January 8, 1868. It is not necessary to set out the pleadings, as no questions arise thereon. The ultimate facts are stated in the opinion. The District Court set aside the deeds, and left the question of moneys paid and received by the defendant under the contract open for future litigation, without prejudice from this action. The defendant appeals.

*Nourse & Kauffman*, and *J. A. Harvey*, for appellant.

*John W. Scott*, for appellee.

COLE, J.—The contract was made June 5, 1862, and thereby the plaintiff stipulated and agreed to devote to the defendant all its swamp lands and all its demands upon the United States for indemnity script. The defendant, in consideration thereof, stipulated and agreed to erect for plaintiff one thousand dollars worth of any public improvement for which said swamp land might legally be devoted, and which the supervisors might deem most needed by the county, and for which they should furnish specifications within one year,—the work to be done within two years; that said defendant should take the said lands and claims subject to all the provisions and conditions of the acts of Congress, and would release the state and county from all liabilities to reclaim the lands, and would reclaim the same at its own expense; that said defendant would sell the lands to actual settlers, and insert a clause in every deed requiring the grantee to make actual settlement within a time to be fixed, and would introduce into the county as actual settlers within two years from October following that date, families embracing from fifty to one hundred and fifty persons; that the defendant would use as much of the script and indemnity to acquire lands within the county of Audubon, for its use, as possible; that the defendant would be at all future expense in procuring and perfecting the title to said lands, and would also pay and reimburse the county all sums expended in acquiring title; that time should be of the essence of this contract, and a failure by the defendant to make the improvement and introduce the actual settlers shall forfeit all sums paid and all claims for improvements made up to the breach. It was also agreed that as soon as the improvement was made and the settlers introduced, the county would convey the land, and, if necessary for actual settlement, it would convey such parcels from time to time as requested, upon being secured; that the right to the script, indemnity, etc., should be conveyed to the defendant at once, or upon

request, and by giving security; that on such lands as the county retains an interest, either in fee or mortgage, the county should assess no taxes until after two years. And that the contract should be null and void unless ratified by a vote of the electors of the county.

At a special election, held June 21, 1862, the contract was ratified—the vote standing thirty-one for, and nine against. And at the general election held in October, 1862, it was re-submitted to a vote of the people of the county, and was again ratified by a vote of seventy for, and three against; at the same election the vote for clerk of the district court stood forty-three for one candidate and thirty-seven for the other— a total vote of eighty.

When the contract was made, the claim of the county for swamp lands had been investigated by the general government, upon proof furnished by the county, and rejected, except as to 2056.92 acres. Soon thereafter the defendant entered upon the work of securing a reversal of the order rejecting the claims, and of taking further' proof. The defendant was likewise interested in the swamp land claims of many other counties, and after the expenditure of much of time, effort and money, a re-hearing was secured, a reversal of the order rejecting the claims of Audubon and other counties was obtained and a rule established, whereby the claims to swamp land, indemnity, etc., were allowed. The whole claim of Audubon county was for 10576 acres of swamp land; of this the claim to 1564 acres was rejected finally; 2096.92 were certified to the state and conveyed to the county; 3045 acres had been sold by the government for cash, and 3871 acres had been located with bounty warrants. For the lands which the government had sold for cash, there was allowed the county, in cash, the sum of $3723.49; and for that located with warrants, there was allowed the county indemnity scrip for 3612 acres, of which 357.64 acres only were located in Audubon county, and these lands passed to the grantee of the county, and for which the county, and not the defendant, received pay. The evidence tends to show, and very satisfactorily proves, that the defendant paid to and for the plaintiff in

consideration for the swamp lands, etc., under the contract and its modifications, an amount of money somewhere between $4500 and $5000, besides the expenses it incurred in preparing the further proofs and in employing counsel to argue the legal questions before the officers of the government.

On January 7, 1867, the board of supervisors of Audubon county, at a regular meeting, after reciting the contract between the plaintiff and the defendant as hereinbefore set out, and adopting a resolution that a conveyance be made, did execute a conveyance for 5600 acres of the land, " in pursuance of said agreement in writing, and in consideration of the sum of two thousand two hundred and seventy-one dollars to the said party of the first part paid by said company." And afterwards, and on January 8, 1868, a like conveyance for 276.74 acres was made.

The evidence tends to show that the defendant did not erect any improvement for the county, but, in lieu thereof, paid money and county warrants to the plaintiff. There is nothing to show that any plans or specifications for any work or improvement were ever furnished by the plaintiff to the defendant. It is not shown when or how many actual settlers were introduced into the county by the defendant. But it does appear that the defendant had sold to settlers over two thousand acres of the lands in controversy, and a part of them had been paid for in full and conveyed to such settlers, and the remainder had been only partly paid for and not yet conveyed.

It is further shown that Audubon county has levied and collected taxes on the lands in said county in controversy in this suit, for the years 1867 to 1872, both inclusive; that the defendant has paid taxes on said lands, during that time, $1453.15, and that parties purchasing the lands of the defendant have generally paid the taxes on the lands after their respective purchases, and the amount paid by them is not included in the amount above stated; the taxes paid by the defendant on the lands in Audubon county for 1872 amount to $324.05; that of all the taxes paid by defendant of the lands in that county, $487.46 have been paid on lands claimed by the railroad.

. I.   The validity of the contract and conveyances is assailed on several grounds.  *First:*   Because the title was not, at the time of sale, perfected in the state, and the lands were not sold at one dollar and twenty-five cents per acre.   By an act approved January 13, 1855, (see Rev. of 1860, Sec. 956,) it was enacted that " no swamp or overflowed lands granted to the state, and situated in the present unorganized counties, shall be sold or disposed of till the title to said lands shall be perfected in the state, whereupon the title to said lands shall be transferred to the said counties where they are situated."  " Sec. 959.   No swamp or overflowed lands shall hereafter be sold at less than one dollar and twenty-five cents per acre."

To the first part of the objection it is, perhaps, a sufficient answer, that it does not appear that Audubon county was, at that time, unorganized, and hence not within the terms of the law.   As to the second part, or reason, for the objection. the answer is, that by a subsequent act, approved March 28, 1858, (see Rev. of 1860, Sec. 986.) it was enacted, " that it shall be competent and lawful for the counties owning swamp or overflowed lands, to devote the same or the proceeds thereof, either in whole or in part, to the erection of public buildings for the purpose of education, the building of bridges, roads," etc., etc., provided the proposition to so devote them shall be submitted, at some general or special election, to the people of the county.   The next section, (987) provides for making the contracts and conveyances for carrying out such purposes.   It appears to us that the provisions of this later statute are independent of the other, and that the regulation of the former act, as to price, does not apply to cases arising under the later statute; and furthermore, it appears to us that the contract and conveyances in controversy were made under this later act, and are not invalid, for the reasons here claimed, as above stated.

II.   It is next claimed that the contract and conveyances are invalid, because, by the very terms of the contract itself it is agreed that " any failure on the part of said company to make the said improvements, or to

*Margin notes: 1. SWAMP LAND: sale by county.  2. CONTRACT: breach: waiver.*

introduce into the county of Audubon said settlers within the time aforesaid, and so perform the contract as to be entitled to a deed of conveyance from the county within two years from the 15th day of October next, vitiates all interest of said company to said lands; and time being of the essence of the contract, the company shall thereby forfeit all sums paid on the same and all claims on the county for improvements made up to the time of a breach of this contract on their part." This stipulation was manifestly made for the benefit of the county, and to secure fully its rights, and not to make the contract utterly void upon a breach. *Bradford v. Simpson*, 10 Iowa, 35, is an exceptional case. That there was a breach in fact, is not shown; but if there was, the execution of the conveyances was a complete waiver.

III. The counsel for the appellee further insists that the contract is void for uncertainty, because the particular improvement to be erected was not specified. But since the right to make the plans and specifications was left to plaintiff, whereby the improvement could be made certain, the case is very clearly within the rule *id certum est quod certum reddi potest.*

IV. Again it is urged that the contract was illegal in part, for that the county had no authority to devote its swamp 3. SWAMP LANDS: actual settlers. lands to the purpose of bringing settlers into the county. But this provision respecting actual settlers was a mere limitation upon the manner of alienation by the defendant, and since it was in accord with the public interests and with the general legislation of that period, it could hardly be relied upon as illegal so as to defeat a contract.

V. It is further claimed that the consideration paid by the defendant was inadequate, and for this reason the convey- 4. CONTRACT: consideration. ances should be set aside. There is no proof or averment as to the value of the land in controversy, either at the date of the contract, of the conveyances, or of bringing this suit. If the lands and scrip both be estimated at one dollar and twenty-five cents per acre, being 5708 acres, it would amount to $7135. The defendant paid over

$4500, besides the expenses. This inadequacy alone is not such as to justify a court in setting aside the conveyances.

VI. But there are affirmative facts in the case, which must, under our former decisions, defeat the plaintiff's action, even if there was much more of reality and effect

**5. PARTIES: equity.**

in the objections urged than we have found them to possess. First, it is proved, and stands without any color of contradiction, that over two thousand acres of the lands in controversy have been sold by defendant to actual settlers upon them, and that a part of said lands have been fully paid for, and conveyed by the defendant to the several purchasers; while others have been paid for in part and held by the purchasers under contract. None of these purchasers are made parties to this action. Surely no court of equity can, or ought, to set aside the title under which they hold, without first requiring them to be made parties and affording them an opportunity to be heard. *Adams County v. The B. & M. R. R. Co.*, 39 Iowa, 507.

And, second, it also appears, and without contradiction, that the plaintiff has regularly assessed these lands in controversy to the defendant, and collected taxes thereon

**6. ESTOPPEL: taxation.**

regularly for eight years. These facts have been held by this court to work an estoppel upon the county. *The Iowa Railroad Land Co. v. Story County*, 36 Iowa, 48; *Adams County v. The B. & M. R. R. Co.*, 39 Iowa, 507.

The plaintiff's petition should have been dismissed absolutely.

REVERSED.