Adams County v. The B. & M. R. R. Co.

ADAMS COUNTY v. THE B. & M. R. R. Co. ET AL.

1. **Practice:** AMENDMENT AFTER TRIAL: DILIGENCE. Where, in an equity case remanded by the Supreme Court for a decree, an amended pleading is permitted to be filed setting up facts alleged to have been discovered by the party since the former trial, and which raise a new issue, the allowance of such pleading constitutes an adjudication of the question of diligence in discovering the facts pleaded, and such question cannot be again raised upon the trial.

2. ——: ——: RETRIAL. In such a case the second trial is confined to the new issue raised by the amended pleading.

3. **Res Adjudicata:** PRACTICE IN THE SUPREME COURT. All questions covered by a decision of the Supreme Court in any case become *res adjudicata*, and will not be reconsidered or reviewed in a subsequent appeal in the same action.

*Appeal from Adams District Court.*

FRIDAY, DECEMBER 10.

ACTION in equity to establish and quiet title to certain land claimed by the plaintiff as swamp land. The defendant claims to have derived title to the same under the act of Congress of May 15, 1856, granting lands in this State to aid in the construction of railroads. The action was commenced in 1869, and the present is the third appeal taken in the case. Upon the first trial a judgment was rendered for the plaintiff. Upon appeal the judgment was reversed. 39, Iowa, 507. The reversal was placed upon the ground that it appeared from the evidence that the plaintiff was not the owner of the land. Afterwards, upon rehearing, a supplemental opinion was filed and the reversal was placed upon the ground that it appeared from the evidence that the plaintiff had assessed the land and collected taxes thereon from the defendant, and was thereby estopped from asserting title thereto. The case having been remanded the plaintiff asked leave to file an amended replication, averring that the assessment and collection of taxes were made by inadvertence and mistake. The application

was accompanied by affidavits tending to show that the fact of the mistake did not, until after the submission of the case, come to the plaintiff's knowledge, and could not have been discovered in the exercise of reasonable diligence. The court refused to receive the affidavits, and refused to allow the amendment, and rendered judgment for the defendant, which, upon appeal was reversed. 44 Iowa, 335. The case having been remanded the amendment was allowed and the parties took additional evidence, not only upon the new issue made in regard to the alleged mistake, but upon all the issues in the case, including those which had been disposed of. Upon a trial judgment was rendered for the defendant, the court holding that it did not appear that the plaintiff exercised reasonable diligence to discover that the assessment and collection of taxes were made by mistake. The plaintiff appeals.

*F. M. Davis*, for appellant.

*Stuart Bros.*, for appellee.

ADAMS, J.—It appears to us that the ground upon which the judgment of the court below is based is not tenable. The question of diligence was determined upon the affidavits which accompanied the plaintiff's application for an order allowing it to amend and tender a new issue. It was not to be determined again, we think, upon the trial. It is true such affidavits are taken *ex parte*, and do not constitute as satisfactory evidence as might be elicited upon an examination and cross-examination of witnesses. But they constitute the sole evidence of diligence in an application for a new trial in an action at law, where the question of diligence is involved, and we think that they are sufficient in an action in equity.

1. PRACTICE: amendment after trial: diligence.

But notwithstanding the court may have erred in the ground of its decision, the judgment must be allowed to stand if the plaintiff has failed to prove its averment that the assessment and collection of taxes were made by mistake, unless, as the

plaintiff claims, the whole case is subject to review, and upon such review the decision appears to be wrong.

The first question which presents itself is as to whether the plaintiff was limited to the trial of the new issue pre-

2. ——: ——:. sented in the amended replication. In our opin-

retrial. ion it was. We have come to this conclusion with much caution, because it is strenuously insisted by the learned counsel for the plaintiff that it should not be held to be estopped by the assessment and collection of taxes, even if the assessment and collection were not made by mistake. It is said in the first place that the court was misled in regard to the facts upon which the estoppel was grounded, as appears from the evidence produced at the last trial; and in the second place that as a matter of law the assessment and collection of taxes by a county do not estop it from claiming title to the property taxed.

Some of the members of the court have come to entertain considerable doubt as to the correctness of the ruling, holding that there was an estoppel in this case. But we think that we cannot go into that question. The case was not remanded. for a new trial, but for judgment in accordance with the opinion. The court below could have done nothing but render judgment if there had been no application for an order allowing the filing of an amended replication and the tender of a new issue upon the ground of a newly discovered fact material to the determination of the case. If without such application the plaintiff had claimed in the court below a right to a retrial upon, and redetermination of, the question of estoppel, the impropriety would have been manifest at once. The case might, to be sure, have been opened below, upon a proper showing, for the purpose of letting in new evidence upon old issues; but that would not have involved the retrial of issues to which the new evidence was not applicable. Where a case in equity, triable upon written evidence, involves independent issues, and it is opened for the purpose of letting in newly discovered evidence upon one of

the issues, there is no more reason for letting in evidence not newly discovered upon the other issues than there would be in opening the case in the first place for evidence not newly discovered. The facts, then, in regard to this estoppel were to be taken as before determined, subject merely to the showing, if the plaintiff could make it, that the collection and assessment of taxes were made by mistake. We think, too, that we are equally precluded from a re-examination of the legal question.

An appellate court may, and should, overrule its decisions where they are wrong, and where adhering to them would work more mischief than overruling them. As between persons not parties to a decision it has only the force of an authority. If erroneous, they should not be affected by the error because they are in no way responsible for it. As between the parties to a decision it becomes an adjudication. It is urged, however, that it should not be so considered so long as the case is pending. Whatever force there might be in this position in an action at law, where the right to introduce new evidence after verdict involves the retrial of the whole case, we think it cannot be maintained in a case like this. Indeed, the authorities seem to go to the extent of holding that the decision of an appellate court becomes conclusively the law of the case, to be followed in all subsequent proceedings, whether the action be at law or in equity. Of course if the facts change, the rule of law as announced may become inapplicable. In such a case it may become necessary to apply a different rule. *Day v. Gaylord*, 53 Ind., 365. But the facts remaining the same, the rule of law as once held must remain the rule for the case. In *Dewey v. Gray*, 2 Cal., 377, it was admitted that a former decision in the case was made in abrogation of one of the plainest principles of law. HAYDENFELDT, J., said: "If this case were a new one I would not hesitate to overrule it. But legal rules deprive us of the power to do so. The decision having been made in the case, it has become

*Margin note:* 3. RES ADJUDICATA: practice in the supreme court.

the law of the case, and it is not now the subject of revision." In *Stacy v. Vermont Cen. R. Co.*, 32 Vt., 552, the court said: "The rule has been long established in this State, often declared from the bench, and we believe uniformly adhered to, that in the same case this court will not reverse or revise their former decisions. Whatever views the different members of the court may entertain as to the soundness of the former decision, we all agree that the doctrines there annunciated are to be regarded as the law of this case." In *Parker v. Pomeroy*, 2 Wis., 122, there had been a change in the members of the court between two appeals, as in the case at bar, yet on the second appeal the court said: "However we may differ with the conclusions of the court as contained in the opinion given, still it must be esteemed for the purposes of the present case *res adjudicata.*" See, also *Davidson v. Dallas*, 15 Cal., 82; *Phean v. San Francisco*, 20 Cal., 45; *Rector v. Deanly*, 14 Ark., 307; *Washington Bridge Co. v. Stewart*, 3 Howard, 425; *Hawley v. Smith*, 45 Ind., 183; *Thompson v. Dill*, 34 Ala., 177.

Taking, then, the former decision as *res adjudicata*, we have nothing for determination except the new issue tendered by the amended replication. Does the evidence show that the assessment and collection of taxes were made by mistake?

The lands in controversy amount to about twenty-six hundred acres. This court found upon the former appeal that they were assessed to the defendant nearly every year from 1861 to 1868 inclusive, and that the plaintiff received from the defendant taxes on the land to the amount of more than six hundred dollars. The mistake, if any, in assessing this land to the defendant, and collecting taxes upon it, arose from the fact that the defendant was the undisputed owner of a large quantity of land in the county, and in making out the list of the defendant's lands it was inadvertently made to comprise not only what the defendant confessedly owned, but all that it claimed to own, including the lands in question.

That a mistake should be made for several years in regard

to the taxation of twenty-six hundred acres of land appears upon the face of the transaction a strange circumstance, and it is not easily credible. Upon looking into the special facts of the case it appears still less credible. The swamp claim to the land was rejected October 25, 1861, and the land was approved to the railroad company and certified to it the following March. After the swamp claim was rejected the board of supervisors made an order for the taxation of what they called the railroad lands. The lands in controversy were not specifically mentioned in the order, but they were included in the next tax-list made out, and the clerk of the board testifies that the board had knowledge that the lands in controversy were included in the list. We are satisfied from the evidence that the understanding was at that time that the railroad company and not the county probably owned this land, and that the determination of the county was to assess it at all events, and gain the taxes if it lost the land. Afterward, in a general compromise of taxes, the taxes upon this land were compromised and paid as was determined upon the former appeal.

We are of opinion, then, that the judgment of the District Court must be

AFFIRMED.

ON REHEARING.

ROTHROCK, J.—A rehearing having been ordered in this case elaborate arguments have been made by counsel, and we have again examined the questions involved, and the result of such examination is that we adhere to the conclusion announced in the foregoing opinion.

When the cause was reversed upon the appeal, as reported in 44 Iowa, 335, it was remanded for one purpose only, which was to allow the plaintiff to show that the lands were taxed by inadvertence and mistake. An examination of the statement of facts preceding the opinion in that case shows that

this was the only question presented in the court below and in this court. This court had found upon the first appeal (39 Iowa, 507) that the lands were taxed for almost every year from 1861 to 1868 inclusive. Upon that appeal there was a trial *de novo* in this court, and the defendants might have had, at their option, a decree in this court. It was, however, remanded, whereupon the application was made to show, not that the lands had not been taxed, but to show that such taxation was by mistake and inadvertence, and that the fact that the same was a mistake and inadvertence was discovered after the first trial. Upon the second appeal it was remanded to allow the plaintiff to introduce. evidence upon that new issue, and for no other purpose. It is not improper to say that the court did not intend to re-open the whole case. The writer hereof consented to that opinion reluctantly, and only because it narrowed the inquiry to the new issue. The allowance of an amendment and the tendering of a new issue in an equity case after a trial *de novo* in this court, and after *procedendo* filed in the court below, should be allowed only upon the strongest showing of accident, mistake, or for matters arising subsequent to the decree, or the like. A party cannot be allowed to try his case by instalments, or by piecemeal. Such a practice would make litigation practically endless. *Sexton v. Henderson*, 47 Iowa, 131.

We have said this much in addition to what is contained in the foregoing opinion to further show the manifest impropriety of again determining the question as to just what portion of these lands were taxed, and for what years they were taxed. That was determined upon the first appeal.

We desire to add nothing to what has been said as to the taxation having been the result of mistake or inadvertence. Counsel have discussed this question at length. We have re-examined the evidence and are satisfied with the conclusion already announced.

It is said in the foregoing opinion that some of the members of the court have cause to entertain doubts as to the

correctness of the ruling holding that there was an estoppel in this case. It may also be said that some of us are without doubt as to its correctness upon the facts found in the first opinion on rehearing. But what the individual opinion of the members of the court may be upon the original question is of no importance unless we are convinced that the public interests and a correct and just administration of the law require that the case should be overruled. That decision was made in 1874. It announced the rule, in effect, that a county is bound by the law of estoppel the same as a natural person. The same principle was announced in *Iowa R. R. Land Co. v. Story Co.*, 36 Iowa, 48. The doctrine is approved in *Audubon Co. v. Am. Emigrant Co.*, 40 Iowa, 460, and recognized in *The County of Buena Vista v. Iowa Falls & Sioux City R. Co.*, 46 Iowa, 226, and in *Howard Co. v. Bullis*, 49 Iowa, 519. It has been followed by the Circuit and District Courts, and has come to be understood as the settled law of the State. We think it ought not now to be disturbed.

FORMER OPINION ADHERED TO.