BURLINGTON, CEDAR RAPIDS & NORTHERN RAILWAY
COMPANY, Appellant, v. PETER A. DEY *et al.*,
Railroad Commissioner, Appellees.

**Former Adjudication:** APPLICATION OF RULE TO SECOND APPEAL.
This action was originally begun to enjoin the railroad commissioners
from establishing and promulgating joint rates for the plaintiff, in
connection with other railroad companies, for the shipment of cars
over such roads, on the ground that the statutes authorizing the com-
missioners to establish and promulgate such joint rates were in con-
flict with various provisions of the constitution of the United States,
and that of the state of Iowa. Upon a motion to dissolve the tempo-
rary injunction issued in the case, the legal effect of which was the
same as a demurrer to the petition, the constitutionalty of the statutes
involved was fully considered, and affirmed on a former appeal to this
court. The cause having been remanded, the plaintiff amended its
petition by avering that, since the former hearing, the commissioners
*had* fixed such joint rates, ordered that they take effect on a certain
day, and that such order was without authority of law, and in excess
of the powers of the commission, and that the statutes authorizing it
were void, "and in conflict with various provisions of the constitution
of the United States, and that of the state of Iowa, for the reasons
heretofore fully set forth," and each and all of the reasons so referred
to were found in the petition passed upon on the first appeal. *Held*,
upon appeal from an order sustaining a demurrer to the petition as
thus amended, that the demurrer raised no question not raised and
decided on the former appeal, and, particularly, that it did not raise
any question as to the reasonableness of the rates fixed by the com-
missioners, and that, therefore, the questions raised could not be
reconsidered, the rule being well settled in this state that when a
question involved in a cause has once been adjudicated in this court,
it becomes the law of that case, as between the parties, and will not
be reconsidered upon a subsequent appeal of the same cause.

*Appeal from Johnson District Court.*—HON. S. H. FAIR-
ALL, Judge.

THURSDAY, OCTOBER 5, 1893.

ACTION in equity to restrain and enjoin the defend-
ants, as railroad commissioners of this state, from
enforcing a certain order, made by them, establishing

joint rates of charges for the transportation of freight
and cars over the road of the plaintiff and connecting
lines of road; also to enjoin and restrain said commis-
sioners from enforcing any other order compelling the
plaintiff to enter into joint through rates of freight
charges with other railroad companies.—*Affirmed.*

*S. K. Tracy* and *A. E. Swisher*, for appellant.

*John Y. Stone*, Attorney General, for appellees.

KINNE, J.—I. This is the second appeal in this
case. The former appeal was from a ruling of the dis-
trict court refusing to dissolve an injunction, and is
reported in 82 Iowa, 312. The decision of the court
below was reversed, and the cause remanded. The
defendants filed a demurrer to the petition as amended
after reversal, and the court entered judgment sustain-
ing said demurrer, from which ruling the plaintiff
appeals. As the demurrer challenges the sufficiency of
the petition to constitute a cause of action, it becomes
necessary to state the substance of the pleading thus
assailed.

The plaintiff, after averring its corporate capacity,
states that the defendants are the board of railroad
commissioners of this state; that by chapter 28, Acts
of the Twenty-second General Assembly, said board is
given authority to fix, establish and publish reasonable
maximum rates of charges for the transportation of
freight upon railroads within this state; that a schedule
of rates has been adopted by said board for the peti-
tioner, which was accepted and adopted by it as rea-
sonable and just; that said chapter 28, Acts of the
Twenty-second General Assembly provides that all
railway companies doing business in this state, upon
the demand of any person, shall establish joint rates
for the transportation of freight between points on
their respective lines, and shall receive and transport

freight and cars over such routes as the shipper shall direct; also that, when the rates for transportation charges are fixed by the board of railroad commissioners, such rates shall, in all suits brought against any railroad company wherein are in any way involved the charges of such railroad for the transportation of freight, be deemed and taken in all courts of this state as *prima facie* evidence that the rate thus fixed is a reasonable and just charge for the transportation of freight and cars upon such roads, and any greater rate charged shall be deemed extortion. Said chapter further provides that for violating the charges or rates thus fixed the penalty is to forfeit and pay to the state of Iowa not less than one thousand dollars nor more than five thousand dollars for the first offense, and not less than five thousand dollars nor more than ten thousand dollars for any subsequent offense, to be recovered in a civil action by ordinary proceedings in the name of the state; that demands have been made upon the petitioner, under the law, that it shall make joint rates with other railroads, as in the act contemplated, and the petitioner refuses so to do; that under the act of the legislature known as the "Joint-Rate Act" it becomes the duty of the commissioners, upon such refusal, and upon the application of any person, to establish joint rates between the defendant and connecting roads; that said board has been so requested to establish joint rates between the petitioner and other railroads, and is about so to do, and to promulgate the same, and said rates will be established and promulgated unless restrained by order of this court, thereby subjecting the petitioner to the penalties heretofore referred to in the event of noncompliance with the joint rates so established and promulgated; that the joint-rate bill, a copy of which is attached hereto, is unconstitutional and void, said commissioners having no authority or right to fix a joint rate, or to promul-

gate the same; that said act deprives the petitioner of rights guaranteed to it by section 9, article 1, of the constitution of Iowa, in that it deprives the petitioner of its property, and the right to contract, and deprives it of its liberty, without due process of law, and prevents it acquiring, possessing, controlling, and protecting its property, as guaranteed by section 1, article 1, of the constitution of Iowa, and by like provisions of the constitution of the United States. If the defendants are permitted to establish and promulgate such joint rates, although the same will be void, yet thereunder the petitioner will be subjected to a multiplicity of suits to recover the penalties referred to, and will be otherwise harrassed by vexatious litigation. The petitioner is without remedy at law, and prays that a temporary writ of injunction issue restraining the defendants, and each of them, as such board, from establishing and promulgating joint rates with it in connection with other railroads for the shipment of freight and cars over such different railroads, and that on final hearing the injunction may be made perpetual.

July 7, 1890, the petitioner amended its bill averring that the joint-rate act was unconstitutional and void, because it denied the right of trial by jury, and denied due process of law in the protection and preservation of its property as guaranteed by section 9, article 1, of the constitution of Iowa; that its property or its use thereof, is taken without its consent, and without just compensation, for private and public purposes; that its right of appeal is so tampered with as to make it ineffectual; that in the enforcement of any order promulgated by said commissioners all distinctions between law and equitable actions are abolished by said acts, in violation of section 6, article 5, of the constitution of Iowa, that said acts are in violation of section 8, article 1, of the constitution of the United States, in that they are a regulation of commerce among the several states;

that said acts violate section 17, article 1, of the consti-
tution of Iowa by imposing excessive fines and unusual
punishment; that said acts are void because they fail to
describe or define the offenses for which the penalties are
imposed, and impose penalties by way of attorney's
fees; that said acts are in violation of the fourteenth
amendment to the constitution of the United States,
in that they abridge the privileges or immunities of the
petitioner as a citizen, and deny it the equal protection
of the laws, deprive it of its property, and the use
thereof, without just compensation or due process of
law; that by said acts the petitioner is denied the lib-
erty of contracting with reference to its business, is
compelled to enter into involuntary, unreasonable, and
unprofitable contracts with other railroad companies at
the instance of third persons, compelling the operation
of the road at a loss; that no notice is given the
petitioner of the time and place when and where said
joint rates will be fixed, or to show the unreasonable-
ness of the same; that the rates so fixed are final and
absolute.

The following exhibit was attached to and made a
part of the petition:

"EXHIBIT A.

"An act to amend chapter 28 of the Acts of the
Twenty-second General Assembly, giving authority for
the making of rates for the transportation of freight
and cars over two or more lines of railroad within this
state, and enlarging the powers and further defining
the duties of the board of railroad commissioners.

"*Be it enacted by the general assembly of the state of
Iowa:*

"Section 1. That chapter 28 of the Acts of the
Twenty-second General Assembly be and the same hereby
is amended as follows: That said chapter 28 of the Acts
of the Twenty-second General Assembly shall not be con-

strued to prohibit the making of rates by two or more railroad companies for the transportation of property over two or more of their respective lines of railroad within this state, and a less charge by each of said railroad companies for its portion of such joint shipment than it charges for a shipment for the same distance wholly over its own line within the state, shall not be considered a violation of said chapter 28 of the Acts of the Twenty-second General Assembly, and shall not render said railroad company liable to any of the penalties of said act, but the provision of this section shall not be construed to permit railway companies, establishing joint rates, to make by such joint rates any unjust discrimination between the different shipping points or stations upon their respective lines between which joint rates are established, and any such unjust discrimination shall be punished in the manner and by the penalties provided by chapter 28 of the Acts of the Twenty-second General Assembly.

"Sec. 2.    All railway companies doing business in this state shall, upon the demand of any person or persons interested, establish reasonable joint through rates for the transportation of freight between points upon their respective lines within this state, and shall receive and transport freight and cars over such route or routes as the shipper shall direct.    Car loads shall be transferred without unloading from the cars in which shipments were first made, unless such unloading in other cars shall be done without charge therefor to the shipper or receiver of such car load lots, and such transfer be made without unreasonable delay and less than car load lots shall be transferred into the connecting railway cars at cost, which shall be included in and made a part of the joint rate adopted by such railway companies or established as provided by this act.    When shipments of freight to be transported between different points within this state are required to be carried by

two or more railway companies operating connecting lines, such railway companies shall transport the same at reasonable through rates, and shall at all times give the same facilities and accommodations to local or state traffic as they give to the interstate traffic over their lines of road.

"Section 3. In the event that said railway companies fail to establish through joint rates or fail to establish and charge reasonable rates for such through shipments, it shall be the duty of the board of railroad commissioners, and they are hereby directed, upon the application of any person or persons interested, to establish joint rates for the shipment of freight and cars over two or more connecting lines of railroad in this state, and in the making of such rates, and in changing or revising the same, they shall be governed as near as may be, by all the provisions of chapter 28 of the Acts of the Twenty-second General Assembly, and shall take into consideration the average of rates charged by said railway companies for shipments within this state for like distances over their respective lines, and rates charged by the railway companies operating such connecting lines for joint interstate shipments for like distances. The rate established by the board of railroad commissioners shall go into effect within ten days after the same are promulgated by said board, and from and after that time the schedule of such rates shall be *prima facie* evidence in all of the courts of this state that the *rates therein fixed are reasonable and just maximum rates for the* joint transportation of freight and cars upon the railroads for which such schedules have been fixed.

"Section 4. Before the promulgation of such rates as provided in section 3 of this act, the board of railroad commissioners shall notify the railroad companies interested in the schedule of joint rates fixed by them; and they shall give said railroad companies a reason-

able time thereafter to agree upon a division, and to notify the board of such agreement, and the board of railroad commissioners shall, after a hearing of the companies interested, decide the same, taking into consideration the value of terminal facilities, and all the circumstances of the haul, and the division so determined by the board shall in all controversies or suits between the railroad companies interested, be *prima facie* evidence of a just and reasonable division of such charges.

"Section 5.    Every unjust and unreasonable charge for the transportation of freight and cars over two or more railroads in this state is hereby prohibited and declared to be unlawful, and each and every one of the companies making such unreasonable and unlawful charges, or otherwise violating the provisions of this act, shall be punished as provided in chapter 28 of the Acts of the Twenty-second General Assembly for the making of unreasonable charges for the transportation of freight and cars over a single line of railroad by a single railroad company.

"Section 6.    This act being deemed of immediate importance shall take effect and be in force from and after its publication in the *Iowa State Register* and the *Des Moines Leader*, newspapers published in the city of Des Moines, Iowa." Acts, Twenty-third General Assembly, chapter 17.

After the case had been remanded, the plaintiff amended its bill by alleging that, since the filing of the original bill and the amendment thereto, the defendants, in furtherance of their unlawful attempt to execute said joint-rate statute, did on October 7, 1890, promulgate and issue, and are now attempting to enforce, and will enforce, unless restrained by order of this court, the following joint or through rate or order as made by them:

"IOWA FREIGHT RATES."

"Revised Schedule of Reasonable Maximum Rates for the Transportation of Freight within the State of Iowa.

"Notice is hereby given that, in pursuance of the Acts of the Twenty-second General Assembly of the state of Iowa, the schedule of reasonable maximum rates of charges for the transportation of freight within the state of Iowa now in effect on the respective lines of railway of said state has been revised and amended by the adoption of the following:

"From and after the 25th day of October, 1890, the following railroad companies engaged in the business of common carriers and doing business within the state of Iowa, viz.: [here follows the names of all the railroad companies in Iowa] shall be governed by the following rule in making rates for passing over two or more lines within the state: The maximum rate of freight to be charged by any railroad company receiving business from a shipper at a station on its line within the state of Iowa destined to a point within the state of Iowa on another line of railroad, or receiving freight originating within the state of Iowa on the line of another railroad and destined to a point within the state of Iowa on its line, shall be eighty per cent. of the schedule of reasonable maximum rates of charges for the transportation of freight and cars in Iowa as fixed by the board of railroad commissioners of Iowa, and now in effect. October 8, 1890." (Signed by the commissioners.)

The amendment avers "that said order is unlawful, and was promulgated and issued without authority of law, and in excess of the powers of said railway commission; and the statute pretending to authorize any such schedule of joint through rates is void, and in conflict with the various provisions of the constitution of the United States, and that of the state of Iowa, for

the reasons heretofore fully set out." The prayer
attached to this amendment asks that the defendants be
enjoined and restrained from attempting to enforce or
execute said order, and also prays that they be
restrained from putting into effect any other order
compelling petitioner to enter into joint through rates
of freight charges under said pretended statute with
other railroad companies.

October 9, 1891, the defendants demurred to the
petition as amended, because: *First.* The petition and
its amendments do not show any facts which entitle the
plaintiff to the relief demanded. *Second.* The statute
complained of in the petition is constitutional and
valid, and has been so held by the supreme court. On
the hearing of this demurrer the district court held
that the facts stated did not entitle the plaintiff to the
relief demanded, or to any relief, and sustained the
demurrer. The plaintiff excepted to the ruling, and,
failing to further amend its petition, and electing to
stand thereon, judgment was rendered against it on
said demurrer, and for costs, to which it excepted and
appealed.

The italicized words in section 3 of chapter 17,
above set out, were not in the act originally, but were
incorporated therein by amendment by chapter 25 of
Acts of the Twenty-fourth General Assembly. It is
contended that the case as now presented raises no
question not involved in and passed upon by this court
in its opinion on the former appeal. If this be so, it
can only be determined by an examination of the
issues as made in each case.

II. If the contention of the state is correct, that
this case involves no legal question not passed upon
on the former appeal, it is decisive of the case, as we
are precluded on this second appeal from reviewing
questions presented and passed upon on the first hearing.
It will be observed that the petition on the former trial

below was attacked by a motion to disolve the injunction which had been issued. The legal effect was the same as though the defendant had challenged its sufficiency by a demurrer. On the former appeal the sufficiency of the allegations of the petition, as then amended, to justify the granting of the relief therein prayed, were exhaustively considered, and this court held that the petitioner was not entitled to the relief prayed. Now, wherein are the issues changed from what they were on the former appeal? What new legal question or questions are presented by the pleadings? The only change in or addition to the plaintiff's bill is, that it has by an amendment made since the former hearing pleaded the order of the railroad commissioners fixing maximum joint rates, and ordering that they take effect on a certain day. This amendment avers that the order is made without authority of law, and in excess of the powers of the commission; that the statute authorizing it is void, "and in conflict with the various provisions of the constitution of the United States, and that of the state of Iowa, for the reasons heretofore fully set out." And each and all of the reasons so referred to are to be found in the petition as amended, and as passed upon by this court in its opinion on the first appeal. It was then pleaded, that the act under which the commissioners have since made the order was void, and for many reasons, not necessary to be again repeated, in conflict with the federal and state constitutions. In no respect is any new legal question presented by this appeal.

Counsel for the petitioner, it is true, in argument, and with great ability, urge that the order made, fixing the reasonable maximum joint rate at eighty per cent. of the shedule of reasonable rates already in force, is, on its face, unreasonable; but no such claim is made in the amendment. The amendment charges that the rate is unlawful, and in excess of the powers of the

commission, not because of the unreasonableness of the rate fixed, but because the statute under which the order is made is unconstitutional and void, for reasons set out in the original bill and the first amendment thereto. We think the amendment, fairly construed, does not raise any issue as to the reasonableness of the rate in fact made. The objection made to the order is that there was a want of power to make any such order, because of the illegality and unconstitutionality of the legislation which authorized it. That question was made and passed upon on the former appeal, and is the law of this case.

The law is well settled in this state by an unbroken chain of decisions that, as between the parties to a suit, a decision therein becomes an adjudication even if erroneous; that on a second appeal in the same case, when the same legal questions are presented, this court will not revise, reverse, or review its former decision. Such decision will stand as the law of that case. *Adams Co. v. B. & M. R'y Co.*, 55 Iowa, 97; *Barton v. Thompson*, 56 Iowa, 571; *Simplot v. City of Dubuque*, 56 Iowa, 639; *Wagon Co. v. Swezy*, 63 Iowa, 520; *Oil Co. v. Montague*, 65 Iowa, 67; *Ellis v. State Ins. Co.*, 68 Iowa, 578; *District Township of Clay v. Independent District of Buchanan*, 69 Iowa, 88; *Raridan v. Central Iowa R'y Co.*, 69 Iowa, 527; *Drake v. Chic. R. I. & P. R'y Co.*, 70 Iowa, 59; *Davis v. Curtis*, 70 Iowa, 398; *Babcock v. Chic. & N. W. R'y Co.*, 72 Iowa, 197; *Windsor v. Cobb*, 74 Iowa, 709; *Lewis v. Burlington Insurance Co.*, 80 Iowa, 259; *Smith v. Foster*, 85 Iowa, 705. These authorities are in harmony with the decisions in other states upon this question. Elliott, App. Proc. section 578, and cases cited. This rule is held, in the cases cited, to apply even though the court on a second appeal may believe that the first decision was erroneous; and so it has been held to apply in a case where, since the decision on the first appeal and

the second trial in the lower court, the supreme court has in another case overruled the former decision. *Barton v. Thompson*, 56 Iowa, 572. And the rule has been held to apply even though there has been, as in this case, a change in the members of the court between the two appeals. *Parker v. Pomeroy*, 2 Wis. 122.

In thus disposing of this case we are not to be understood as approving of the correctness of the former holding. Some of us are content with the result reached in the former opinion; others—the writer included—do not approve of some of the reasoning and conclusions found in the opinion rendered by a majority of the court as then constituted, and do not wish to be considered as bound by it in any other case. AFFIRMED.