Jennie A. Sleeper, Guardian, Appellee, v. E. C. Killion et al., Appellants.

**PLEADING:** *Admissions—Admission of Legal Conclusion—Effect.*
1, 4 A pleader may contradict his own admission of the correctness of a legal conclusion.

PRINCIPLE APPLIED: See No. 2.

**WILLS:** Vested or Contingent Estates—Postponing Division—Effect.
2 A devise to one for life, with remainder over equally to his children, vests the children, as remaindermen, with a fee simple title instantly upon the death of the testator. *Postponing division in order to let in a life estate does not prevent the vesting of title, unless the devise clearly so provides.*

PRINCIPLE APPLIED: A will devised to a son a life estate in mortgage-encumbered lands. The will provided for equal division of the property among the son's children after his death. It provided also that, if the son predeceased the testator, the property was to pass to said children upon the death of testator. The son and one child survived testator. Later, two other children were born to the son. Thereafter one child died. Still later, the mortgage was foreclosed, without any service on said two living children, sale was had, deed was issued, and one Killion acquired the title so conveyed. After foreclosure, another child died. The son and his wife were the sole heirs of said two deceased children. After the death of the two children, the son and his wife conveyed the land, and Killion acquired the title so conveyed. The son died, survived by the *one* remaining child. Action was brought to quiet title in said surviving child to the *entire* land. The guardian alleged: (a) The probate of said will; and (b) that no remainder vested *until the death of the son*, and that, therefore, said remainder vested *solely* in said surviving child. The defendant Killion *admitted said allegations*, but pleaded the said foreclosure in bar, and the trial court sustained the plea. On appeal, the opinion was con-

fined solely to the holding that the foreclosure was void, as to said surviving child, because of lack of' notice. Perfunctory attention was given, on appeal, to the question whether the surviving child took, under the will, *all* or a *part* only of the land. A *general* order of reversal was entered.

After remand, defendant Killion, by amendment, offered to plead, in effect: (1) That, upon the death of the testator, the entire remainder vested instantly in the one child then living; (2) that twice thereafter, on the birth of the two other children, the remainder opened in order to let in said after-born children; (3) that, as a consequence, each of the three children became *fully vested* during their lifetime, and as remaindermen, with a fee to one third of the land; (4) that the son and wife inherited the two thirds left by the two deceased children; and (5) *that the final surviving child owned only a one-third interest in the land.* This amendment was rejected. On motion, decree was entered in favor of said final surviving child for the *entire* land. On appeal, *held*:

(1) That said rejected amendment correctly construed the will.

(2) That defendant, after remand on the first appeal, might, *without any pleading*, ignore his said admission that the final surviving child became vested with the title to *all* the property, because such admission was an admission of the correctness of the plaintiff's *legal conclusion* as to the proper construction of the will.

(3) That, if said admission be treated as one of *fact*, it was neutralized by the qualifying clauses of the pleadings, and by the practical construction and treatment accorded it by the parties and by the courts.

(4) That, under the *general* order of remand, the trial court should have proceeded just as though it had held, on the first hearing, that the foreclosure was void as to said child, and should then have proceeded to construe the will and determine the relief to which the plaintiff child was entitled.

**REMAINDERS:** Vested Remainders—Descent. Remaindermen, with vested title subject to a life estate, hold the property, not as joint tenants, but as tenants in common; and upon the death of one tenant in common, his vested estate passes, in the absence of a will, to his heirs.

PRINCIPLE APPLIED: See No. 2.

**PLEADING:** Admissions—Admission of Legal Conclusion—Effect. 1, 4

PLEADING: Admissions—Admissions of Fact—Construction. An admission of a *fact* may be wholly nullified by qualifying clauses and limitations, and by the practical construction and treatment accorded it by the parties and by the courts.

PRINCIPLE APPLIED: See No. 2.

APPEAL AND ERROR: Reversal—General Order of Remand—Effect. A general and unqualified reversal of a judgment or decree, without other order or direction, works a complete nullification of said judgment or decree, and leaves the case as though said judgment or decree had never been entered.

PRINCIPLE APPLIED: See No. 2.

PLEADING: Amendments—Equity Causes—Amendments After Reversal. Principle recognized that amendment to pleadings in an equity cause may be permissible even after reversal on appeal.

PRINCIPLE APPLIED: See No. 2.

*Appeal from Crawford District Court.*—M. E. HUTCHISON, Judge.

SEPTEMBER 24, 1917.

REHEARING DENIED DECEMBER 18, 1917.

ACTION in equity. Decree for plaintiff, and defendants appeal. The nature of the controversy and the material facts are stated in the opinion.—*Reversed and remanded.*

*Sims & Kuehnle,* for appellants.

*E. H. Swasey* and *Mayne & Green,* for appellee.

WEAVER, J.—In October, 1899, Ellen A.

1. PLEADING: admissions: admission of legal conclusion: effect.

Sleeper died testate, seized in fee of the land which is the subject of this litigation. By the terms of her will, the testatrix devised a life estate in the land to her son, Guy A. Sleeper, with remainder over to his children. At the date of the death of the testatrix, her son, the life tenant, was the husband of Jennie A. Sleeper and the father of one minor child, Helen P. Sleeper. Thereafter, there were born

to him two other children, John James Sleeper and George A. Sleeper. Of the children named, John James died in April, 1902, and Helen P. in April, 1903. Both of the children were unmarried infants, and left their parents, Guy A. Sleeper and Jennie A. Sleeper, as their sole heirs. At the date of the death of the testatrix, the land in question was incumbered by a mortgage; and, in November, 1902, after the death of John James Sleeper and before the death of Helen P. Sleeper, the mortgage debt not having been paid, a suit was brought to foreclose the lien. The petition in that proceeding named both the living children of the life tenant as defendants; but, as it now appears, they were not named in the original notice, and the record does not disclose the service upon them of any sufficient notice. A decree of foreclosure was entered against all the named defendants, including the life tenant, Guy A. Sleeper, and his wife. Under this decree, the land was sold at sheriff's sale to one Voss, and, no redemption being made, he secured a sheriff's deed. Later, and after the death of the two children John James and Helen P., their said parents, Guy A. Sleeper and wife, united in conveying the land by warranty deed to one Dixon. Whatever title was acquired by Voss under the sheriff's deed, and the title conveyed by Guy A. Sleeper and wife to Dixon, have since been merged or united by proper conveyances in E. C. Killion, the defendant in this action. Guy A. Sleeper, the life tenant, died March 2, 1910, survived by his wife, Jennie A. Sleeper, and by George A. Sleeper, his only living child. Thereafter, Jennie A. Sleeper, widow of the life tenant, as guardian of the minor, George A. Sleeper, instituted this present action. Her claim is framed on the theory that, under the devise made in the will of Ellen A. Sleeper, the remainder over after the death of the life tenant vested alone in the child or children who might be living at his death; and, as her ward, George A. Sleeper, is the only person of that

class, he became and is vested with the entire title. His
right in this respect, she says, is in no manner affected
by the foreclosure of the mortgage, because he was not
served with notice of the proceeding, and the decree as
against him is void for want of jurisdiction. The petition
prays that the title of the ward be confirmed and quieted
as against the defendants, and that they be required to ac-
count for rents and profits. The answer of the defendants
admitted in general terms the facts pleaded in the first four
paragraphs of the petition, but denied all other allegations
therein. It is further alleged affirmatively that the notice
was served on the minor defendants in the foreclosure suit,
that said defendants appeared and answered by guardian
ad litem, and that the trial court found and adjudged the
service sufficient; wherefore it is asserted that the right
and interest of plaintiff's ward were cut off by the sher-
iff's sale and deed. By cross-petition, defendants set up the
same alleged facts, and asked that the title of the defend-
ant Killion be confirmed and quieted against the claims of
the plaintiff and her ward. The trial court having found
for the defendants upon the issues thus joined, the plain-
tiff appealed to this court, which held that there was no
service of notice upon the minors in the foreclosure pro-
ceeding, and reversed the decree. *Sleeper v. Killion,* 166
Iowa 205. The cause having been remanded upon proce-
dendo, defendants again appeared, and asked leave to amend
their answer and cross-petition by alleging specifically that,
at the death of the testatrix, Ellen A. Sleeper, her son, Guy
A. Sleeper, the devisee of a life estate under her will, had
but one child, Helen A. Sleeper, who thereupon became
vested with the entire remainder; that thereafter, there were
born to the life tenant two other children, John J. and
George A., with the result that the remainder opened, ad-
mitting said two later-born children to share therein on
equal terms with Helen P.; that thereafter, and during the

lifetime of their father, both Helen P. and John J. died intestate, leaving their parents, Guy A. Sleeper and Jennie A. Sleeper, their sole heirs; and that the title and interest so acquired by Guy A. Sleeper and Jennie A. Sleeper in the land was conveyed by their warranty deed to Dixon, and by mesne conveyances from him to the defendant Killion. In other words, the claim thus asserted is that, conceding the invalidity of the foreclosure proceedings as against the plaintiff's ward, the extent of his title or interest in the land never exceeded a one-third share therein, and that the other two-thirds, which had been vested in Helen P. and John J., passed by inheritance upon their death to their parents, and thence by good and sufficient conveyances to the defendant; and because thereof the relief, if any, granted to plaintiff for her ward should be limited to the one-third part or share in the property. The trial court denied the motion for leave to amend the answer, and sustained plaintiff's motion for a decree confirming the title of her ward to the entire property, reserving, however, the matter of accounting for rents and profits and claims under the Occupying Claimant's Act. From the decree thus entered, the defendants have appealed.

At a prior term of this court, an opinion was filed affirming that decree. *Sleeper v. Killion,* 157 N. W. 226. Thereafter, defendant's petition for rehearing was sustained; and the cause has been resubmitted, with additional arguments on the part of counsel for the respective parties.

On the original appeal from the decree in defendant's favor, the attention of counsel and of the court was directed almost entirely to the question of the jurisdiction of the trial court in the foreclosure proceedings to enter a decree of any kind against plaintiff's ward, because of want of the notice required by law. The extent of the ward's right in the premises in case the decree of foreclosure was set aside as against him had little and quite perfunctory

consideration. The trial court, having found in favor of
the validity of the foreclosure, had no occasion to pass upon
or decide the further question concerning the nature or ex-
tent of the title or interest to which the ward would have
become entitled, had the jurisdictional objection to the fore-
closure been found good.   Indeed, that phase of the contro-
versy first arose for consideration only after this court, on
plaintiff's appeal, held the foreclosure decree void as against
the plaintiff's ward.   As will be seen by reference to the
opinion reversing the original decree, the one proposition
on which the reversal was ordered is that the trial "court
was without jurisdiction to enter the decree against plain-
tiff herein, in the original suit, and that such decree was
void."   The order of reversal was general in form, and con-
tained no specific direction or mandate as to the nature or
extent of the relief to be awarded the plaintiff.   Upon the
restoration of the case to the docket of the trial court, that
tribunal was bound, of course, to accept as final the ruling
of this court that the foreclosure was void, and to proceed
to enter a decree on that theory; but, in the absence of other
specific direction, express or implied, it was within the
province, and it was the duty, of that court to look to the
record and to determine therefrom the nature and extent
of the relief to which the plaintiff became entitled upon
abrogation of the foreclosure.   Such relief could not right-
fully extend beyond the restoration to the ward of the
property and property rights of which he had been erro-
neously deprived by such foreclosure.   With the case in
this situation, the defendant sought to amend his answer by
specifically alleging facts showing that the ward's title was
limited to a one-third part of the land in controversy.   The
refusal of leave to so amend, and the decree thereupon ren-
dered in plaintiff's favor, awarding the entire property to
her ward, give rise to the following pertinent inquiries;
What interest did the plaintiff's ward acquire in the prop-

erty under the terms of his grandmother's will? If it shall appear as a matter of law that he acquired no more than an undivided one third, is there anything in the record to prevent or estop the defendants from insisting that the title to be established in said ward's favor by the court's decree shall not exceed the share so indicated? Was any amendment to the answer necessary to enable the defendants to insist upon their rights in that respect; and if necessary, should the leave asked for have been granted?

I. The will of the grandmother pro-

2. WILLS: vested or contingent estates: postponing division: effect.

vided in terms that the title to all her property should vest in her son, Guy A., for life, and then be "equally divided among his children;" but, in case of the death of Guy in the lifetime of the testatrix, then the entire estate should pass to his children immediately upon her death. It is the contention of plaintiff's counsel that, under these provisions, the children of the life tenant acquired no vested right or interest in the land during his lifetime; and, as plaintiff's ward was the only child who survived said life tenant, he succeeded to the undivided title and ownership. We are of the opinion, however, that the devise cannot properly be given such construction or effect. It is true that there is authority for the argument that, where there are no express words of gift, and the right of one claiming as devisee or legatee depends solely upon a direction to divide or pay at a date in the future, or upon the occurrence of some named event. there is no vesting of the gift until the date named, or until the happening of the event; but this rule has no application where the postponement is merely to let in some other interest, or permit the enjoyment of an intermediate life estate in another person. See Rood on Wills, Secs. 590, 591; *Post v. Herbert*, 27 N. J. Eq. 540, 544; *Bryant v. Plummer*, (Me.) 90 Atl. 171; *Haviland v. Haviland*, 130 Iowa

611; *Archer v. Jacobs,* 125 Iowa 467; *Carr v. Smith,* 49 N. Y. Supp. 351; *Moore v. Lyons,* 25 Wend. (N. Y.) 118, at 119; *Doe v. Considine,* 73 U. S. 458, at 476; *Cropley v. Cooper,* 86 U. S. 167, at 177.

The will before us makes no other disposition of the estate than to devise it to the son for life, and thereafter to his children. At that date, the son had but one living child, and the devise to his "children in equal shares" clearly indicates the intention of the testatrix to include after-born children in the benefits of the devise, and to treat all members of that class alike. The only reasonable conclusion to be drawn from the will is that the postponement of the time of division between the children was to let in the life estate created for their father; and under such circumstances, as we have already said, it is quite unanimously held that the children take a vested remainder from the date when the will became effective by the death of the testatrix. In the language of Mr. Justice Gray, in *McArthur v. Scott,* 113 U. S. 340:

"Words directing land to be conveyed to or divided among remaindermen after the termination of a particular estate are always presumed, unless clearly controlled by other provisions of the will, to relate to the beginning of enjoyment by the remaindermen, and not to the vesting of title in them. For instance, under the devise of an estate legal or equitable to the testator's children for life, and to be divided upon or after their death among his children in fee, the grandchildren living at the death of the testator take a vested remainder at once, subject to open and let in after-born children; although the number of grandchildren who will take, and consequently the proportional share of each, cannot, of course, be ascertained until the termination of the particular estate by the death of the parents."

The application of this rule to the case
3. REMAINDERS: at bar is too clear to justify argument. The
vested re-
mainders: de- remaindermen under such a devise take as
scent.
tenants in common, and not as joint ten-
ants; and, upon the death intestate of such a tenant in com-
mon, his vested interest passes to his heirs, under the stat-
ute governing the descent of intestate property. See *Shafer
v. Tereso*, 133 Iowa 342; *Moore v. Lyons*, 25 Wend. (N. Y.)
119. None of the cases cited for the plaintiff suggest any
rule inconsistent with our conclusion in this respect. The
law in this respect is well settled; and the confusion, if
there is any, in the adjudicated cases has arisen not so
much from any disagreement upon questions of principle,
as upon differing views of the facts calling for its appli-
cation. The conclusion is, therefore, quite inevitable that
plaintiff's ward was vested with the remainder in the un-
divided one third of the land, and no more; and that, his
parents (the heirs of his deceased cotenants in common
in the remainder), having conveyed all their estate in the
land to defendant's grantor, the ward's fee and right to
enjoyment of the possession were limited to such fractional
share.

II. We are next to consider whether
4. PLEADING: there is anything in the record to deprive
admissions:
admission of defendants of the right to object to the de-
legal con-
clusion. cree which establishes and confirms in plain-
tiff's ward the ownership of the entire tract of land, instead
of the fractional share thereof devised to him. The appellee
urges that such an estoppel arises because of alleged ad-
missions made in the original answer, and because that con-
troversy was adjudicated and settled by the decision of this
court in reversing the decree which had been entered in de-
fendant's favor. The first four paragraphs of the petition
in the original case contained, among others, an allegation
that plaintiff was the only child of the life tenant surviving

him, and as such was vested with the entire remainder.
The defendant's answer admitted the first four paragraphs
of the petition, and set up the foreclosure proceedings, by
which it was claimed that the ward's title had been elim-
inated. Upon this latter issue (the validity of the fore-
closure), as we have already seen, the case was made to
turn in the trial court. In the opinion first filed by us on
the present appeal, we adopted the view that the admission
above referred to was sufficient to estop or prevent defend-
ants from questioning the extent of the ward's title or in-
terest in the land, in the event of a finding in his favor that
the foreclosure decree was void. Upon further reflection
and further argument of counsel, we are convinced that we
gave undue effect to this phase of the pleadings. Treating
it as an admission of fact, it must be taken
with all the qualifying clauses and limita-
tions which the pleader has attached to it;
and if, in connection therewith, facts are
alleged which limit or qualify or nullify it, its effect as an
admission is neutralized. 31 Cyc. 213. And the admission
here relied upon by the appellee, when construed in the
light of both petition and answer as a whole, amounts to
no more than a concession, as a proposition of law, that
plaintiff's ward was a remainderman under the provisions
of his grandmother's will, and that, if his interest had not
been eliminated by the foreclosure proceedings, he was en-
titled to a decree establishing and confirming it. The plain-
tiff was in court, pleading the will of Ellen A. Sleeper as
the source of her ward's title. The effect of such will and
the nature and extent of the ward's title thereunder were
purely questions of law, and these it was for the court to
decide. No admission in the answer could change the law.
The defendants, while admitting the will, and making no
denial of the ward's interest thereunder, were insisting that
such interest had been cut off by the foreclosure. Under

5. PLEADING:
admissions:
admissions of
fact: con-
struction.

such an issue, the ward, if successful in avoiding the fore-
closure, could rightfully demand a confirmation of his title
to no more of the property than was provided for him by the
terms of the will on which the action in his behalf was
based.    Even where a petition is to be taken as true, it is
only to the extent of admitting facts, and not the correct-
ness of the conclusions of law which the pleader attempts
to draw therefrom.    *Twogood, A. J. & Co. v. Coopers &
Clarke,* 9 Iowa 415; *Greer v. Latimer,* (S. C.) 25 S. E. 136;
*Pinney v. Fridley,* 9 Minn. 34; *Spargur v. Romine,* (Neb.)
57 N. W. 523; *St. Joseph & St. L. R. Co. v. St. Louis, I. M.
& I. Ry. Co.,* (Mo.) 36 S. W. 602; *Mayor v. Swink,* (Tenn.)
35 S. W. 554; *Clark v. Missouri, K. & T. R. Co.,* (Mo.) 77
S. W. 882; *The M. & I. S. R. Co. v. Hiams,* 53 Iowa 501.

III.    It follows from the conclusion reached in the
foregoing paragraph that, had the trial court in the original
case found against the validity of the foreclosure, there was
nothing in the pleadings or record which would have pre-
cluded the defendant from insisting that the relief granted
to plaintiff for the benefit of her ward should be limited
to the undivided interest which he acquired by virtue of the
will of Ellen A. Sleeper.    Why, then, may not appellants
insist upon the same proposition when the case comes up
for decree after the remand from this court?    Had that
question been presented to and decided by this court on
the former appeal, then, of course, the trial court would have
been bound to respect that decision.    But such is not the rec-
ord.    That question was not considered or decided by the
trial court in that case; because, as already pointed out,
having concluded that the foreclosure was valid, there was
no occasion to go further, and consider the nature or extent
of the ward's interest under the will.    On appeal, this court
used some expressions which, standing alone, would sug-
gest an assumption that the ward was the sole remainder-

man; but a reading of the opinion as a whole, in the light
of the undisputed record, makes it very clear that the court
did not consider or decide the question whether the ward's
ownership was entire or otherwise. In ordering the re-

6. APPEAL AND
ERROR: re-
versal: gen-
eral order of
remand: ef-
fect.

versal, it did not render or direct final judg-
ment, and, in the very nature of the case
and the issues joined, it could not have done
so. The rule in such cases has been stated
to be that a general and unqualified reversal of a judgment
or decree, without other order or direction, nullifies it com-
pletely, and leaves the case standing as if such judgment
or decree had never been entered. 4 C. J. 1204; *Seevers v.
Cleveland Coal Co.,* 179 Iowa 235; *Dinsmoor v. Rowse,* (Ill.)
71 N. E. 1003; *Ure v. Ure,* 223 Ill. 454. The original decree
having been reversed without directions, upon the sole
ground that the decree of foreclosure was void as against
plaintiff's ward, it was open to the parties, or either of
them, granting the finality of such ruling, to ask the trial
court to proceed and enter such decree as equity might re-
quire upon the proved facts. To permit this, no amend-
ment of the pleadings was necessary. The plaintiff was the
moving party, and had the burden of proving the alleged
title of her ward. This she did, or attempted to do, by
evidence of the will of Ellen A. Sleeper and the decease
of the life tenant and of all his children except plaintiff's
ward. The legal effect of this proof was, as we have said,
to establish the ward's right and title to one third of the
land, and to negative conclusively his claim as to the other
two thirds. The decree of foreclosure was not set aside
as against the life tenant and his wife; and, by virtue there-
of, as well as by their deed of conveyance, the defendant
Killion had acquired unquestionable title to all of the land
except the one third vested in the ward. To have the ad-
vantage of these facts and to have their rights preserved

in the decree to be entered, no amendment of the pleadings was necessary.

7. PLEADING: amendments: equity causes: amendments after reversal.

Reaching this conclusion, we need take no time to discuss or define the extent of the right of amendment after reversal of a decree in an equity case. It is undoubtedly true, as we said upon the former hearing, that a party against whom a reversal has been ordered, cannot be permitted to shift his ground, and by new pleading avoid the effect of the decision against him; but that cases may, and often do, arise where amendment is permissible, is well settled. For example, see *Hogle v. Smith,* 136 Iowa 32, 35; *Adams County v. The B. & M. R. R. Co.,* 55 Iowa 94; Code Section 3600; *Dinsmoor v. Rowse,* 211 Ill. 317; *Chickering v. Failes,* 29 Ill. 294; *Sowerwine v. Central Irr. Dist.,* (Neb.) 136 N. W. 44; *State ex rel. v. District Court of Ramsey County,* 91 Minn. 161; *Steere v. Gingery,* (S. D.) 123 N. W. 863; *Schmitt v. Weber,* 239 Ill. 377; *Fleming v. Reddick,* 5 Gratt. (Va.) 272; *Wisconsin Marine & Fire Ins. Co. v. Mann,* (Wis.) 76 N. W. 780; *Troup v. Horbach,* (Neb.) 78 N. W. 286; *Jones v. Clark and Clark,* 31 Iowa 497; *Pinkham v. Pinkham,* (Neb.) 83 N. W. 837; *Heating & Lighting Co. v. Stevens,* 20 Utah 241; *Heine v. Rohner,* 53 N. Y. Supp. 464; *Wyman v. Jensen,* 26 Mont. 227.

Of course, neither by amendment nor otherwise could defendant be allowed to reopen the one question which was decided upon the first appeal: the invalidity of the foreclosure proceedings as against the plaintiff's ward.

The foregoing conclusions require a reversal of the decree below, and a remand of the case to the district court for the entry of a decree in harmony with this opinion and for the determination of such further questions as may arise concerning the terms upon which plaintiff may exercise her

rights of redemption, as well as upon the matter of rents and profits, and the claims, if any, under the Occupying Claimant's Act.—*Reversed and remanded.*

GAYNOR, C. J., PRESTON and STEVENS, JJ., concur.